**In the United States District Court**
**for the Southern District of Texas**
**Houston Division**

| | |
|---|---|
| **Liz Gomez,** *et al.*, | |
| Plaintiffs, | **Civil Action No. 4:21-CV-01698** |
| v. | |
| **Harris County, Texas,** *et al.*, | Jury Demanded |
| Defendants. | |

**Constable Alan Rosen's Motion to Dismiss**

Constable Alan Rosen, sued and appearing in his individual capacity only,[1] moves the Court to dismiss Plaintiffs Liz Gomez, Marissa Sanchez, Felicia McKinney, and Jassmine Huff's claims under 42 U.S.C. § 1983 because Plaintiffs have failed to state a claim upon which relief can be granted against Constable Rosen. Specifically, Plaintiffs fail to allege facts showing a plausible claim of any constitutional violation against Constable Rosen individually and Plaintiffs' pleadings fail to even address, let alone overcome the presumption of immunity from suit to which Constable Rosen is entitled.

Thus, based solely upon the controlling law measured against Plaintiffs' sensationalistic but ultimately clearly legally insufficient pleading allegations, Constable Rosen is entitled to dismissal under Rule 12(b)(6) for several reasons as follows:

---

[1] Claims brought against Constable Rosen in his official capacity are treated as claims against the entity Harris County, Texas, which is separately represented. *See Moss v. Harris Cty. Constable Pct. One*, 851 F.3d 413 (5th Cir. 2017).

## Table of Contents

**Table of Authorities** ................................................................................................ III

Nature and Stage of the Proceedings ................................................................... - 1 -

Summary of the Grounds for Dismissal ............................................................... - 1 -

Issues Presented .................................................................................................... - 2 -

Standard of Review ............................................................................................... - 3 -
    a.    Motions to dismiss for failure to state a claim. ........................................ - 3 -
    b.    Claims against governmental officials must meet a heightened pleading standard. ............................ - 4 -

Argument & Authorities ....................................................................................... - 5 -
    1.    Plaintiffs fail to state an equal protection claim for sexual harassment. ...... - 7 -
    1.1.    Plaintiffs' unsupported "failure to train" theory fails as a matter of law......................................... - 10 -
    1.2.    Plaintiffs' "refusal to remediate" theory is inapplicable here and, even so, Plaintiffs' theory is belied by Plaintiffs' own pleading admissions. ................................................ - 11 -
    1.3.    Plaintiffs' "ratification" theory provides no basis for a claim against Constable Rosen. .................. - 15 -
    1.4.    Plaintiffs cannot assert a supervisor liability claim against Constable Rosen because Plaintiffs fail to state a claim against Chief Gore or Lt. Rigdon. ...................................... - 15 -
    2.    Felicia McKinney has not and cannot as a matter of law state a due process claim for "sexual battery." .. - 16 -
    3.    Constable Rosen is immune from all Plaintiffs' claims. ......................................... - 18 -

PRAYER ............................................................................................................. - 20 -

CERTIFICATE OF SERVICE ........................................................................... - 22 -

## Table of Authorities

**Cases**                                                                                                   **Page(s)**

*Estate of Aguirre v. City of San Antonio,*
    995 F.3d 395 (5th Cir. 2021) ...............................................................................................18

*Alton v. Tex. A&M Univ.,*
    168 F.3d 196 (5th Cir. 1999) .................................................................................................7

*Anderson v. Pasadena Indep. Sch. Dist.,*
    184 F.3d 439 (5th Cir. 1999) ............................................................................................6, 9

*Anderson v. Valdez,*
    913 F.3d 472 (5th Cir. 2019) ...............................................................................................20

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..................................................................................3, 4, 6, 11, 14, 15

*Backe v. Leblanc,*
    691 F.3d 645 (5th Cir. 2012) ...............................................................................................19

*Baker v. Putnal,*
    75 F.3d 190 (5th Cir. 1996) .............................................................................................4, 11

*Beker Phosphate Corp. v. Muirhead,*
    581 F.2d 1187 (5th Cir. 1978) ...............................................................................................6

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007).............................................................................................................4

*Benavides v. County of Wilson,*
    955 F.2d 968 (5th Cir. 1992) ...............................................................................................11

*Blackwell v. Barton,*
    34 F.3d 298 (5th Cir. 1994) .................................................................................................19

*Brown v. Bd. of Trs. Sealy Indep. Sch. Dist.,*
    871 F. Supp. 2d 581 (S.D. Tex. 2012) (Ellison, J.).............................................................5

*Brown v. Bryan Cty.,*
    219 F.3d 450 (5th Cir. 2000) ...............................................................................................11

*Burlington Indus., Inc. v. Ellerth,*
    524 U.S. 742 (1998)...........................................................................................................12

*Coon v. Ledbetter,*
    780 F.2d 1158 (5th Cir. 1986) .............................................................................................15

*Canton v. Harris*,
    489 U.S. 378 (1989)..................................................................................................11

*Castellano v. Fragozo*,
    352 F.3d 939 (5th Cir. 2003) ...................................................................................5

*Chestang v. Alcorn State Univ.*,
    820 F. Supp. 2d 772 (S.D. Miss. 2011)..................................................................17

*Colbert v. Georgia-Pacific Corp.*,
    995 F. Supp. 697 (N.D. Tex. 1998) ........................................................................13

*Coleman v. Sch. Bd. of Richland Parish*,
    418 F.3d 511 (5th Cir. 2005) .................................................................................12

*Collins v. City of Harker Heights*,
    916 F.2d 284 (5th Cir. 1990) .................................................................................16

*County of Sacramento v. Lewis*,
    523 U.S. 833 (1998)...............................................................................................17

*Daniels v. Williams*,
    474 U.S. 327 (1986)...........................................................................................7, 16

*Dartmouth Review v. Dartmouth College*,
    889 F.2d 13 (5th Cir. 1989) .....................................................................................3

*Davis v. Scherer*,
    468 U.S. 183 (1984)..................................................................................................5

*Doe v. Silsbee Indep. Sch. Dist.*,
    402 Fed. Appx. 852 (5th Cir. 2010)........................................................................17

*EEOC v. Boh Bros. Constr. Co., L.L.C.*,
    731 F.3d 444 (5th Cir. 2013) ...................................................................................8

*Fernandez-Montes v. Allied Pilots' Association*,
    987 F.2d 278 (5th Cir. 1993) ...................................................................................4

*Gates v. Tex. Dep't of Protective & Regulatory Servs.*,
    537 F.3d 404 (5th Cir. 2008) ...................................................................................6

*Gehring v. Harris County*,
    No. 4:15-cv-00726, 2016 U.S. Dist. LEXIS 7189 (S.D. Tex. Jan. 21, 2016)............5

*George v. Harris Cty.*,
    Civ. A. No. H-10-3235, 2012 U.S. Dist. LEXIS 94318 (S.D. Tex. July 9,
    2012) (Rosenthal, J.) ..............................................................................................16

*Gowesky v. Singing River Hosp. Sys.*,
   321 F.3d 503 (5th Cir. 2003) ...................................................................7

*Gunaca v. Texas*,
   65 F.3d 467 (5th Cir. 1995) ...................................................................19

*Harmon v. Dallas Cty.*,
   927 F.3d 884 (5th Cir. 2019) .................................................................5

*Harris v. Forklift Systems, Inc.*,
   510 U.S. 17 (1993)................................................................................8

*Harvey v. Montgomery Cty.*,
   881 F. Supp. 2d 785 (S.D. Tex. 2012) (Ellison, J.)................................9

*Harvill v. Westward Communications, LLC*,
   433 F.3d 428 (5th Cir. 2005) ...........................................................13, 14

*Hernandez v. Tex. Dep't of Protective & Regulatory Servs.*,
   380 F.3d 872 (5th Cir. 2004) .................................................................6

*Hobart v. City of Stafford*,
   916 F. Supp. 2d 783 (S.D. Tex. 2013) (Ellison, J.)..............................15

*Hockman v. Westward Commc'ns, LLC*,
   407 F.3d 317 (5th Cir. 2004) .................................................................8

*Indest v. Freeman Decorating*,
   164 F.3d 258 (5th Cir. 1999) ...........................................................8, 14

*James v. Tex. Collin County*,
   535 F.3d 365 (5th Cir. 2008) .................................................................5

*Johnson v. Halstead*,
   916 F.3d 410 (5th Cir. 2019) .................................................................7

*Jolly v. Klein*,
   923 F. Supp. 931 (S.D. Tex. 1996) ....................................................4, 9

*Kansa Reinsurance Co., Ltd. v. Cong. Mortgage Corp. of Tex.*,
   20 F.3d 1362 (5th Cir. 1994) .................................................................4

*Kipps v. Caillier*,
   197 F.3d 765 (5th Cir.), *cert. den'd.*, 531 U.S. 816 (2000) ...................18

*Lauderdale v. Tex. Dep't of Crim. Justice*,
   512 F.3d 157 (5th Cir. 2007) ...........................................................7, 14

*Longoria v. San Benito Indep. Consol. Sch. Dist.*,
942 F.3d 258 (5th Cir. 2019) ......................................................................19, 20

*McClendon v. City of Columbia*,
305 F.3d 314 (5th Cir. 2002) (en banc) ..................................................................5

*McPeters v. Edwards*,
806 F. Supp. 2d 978 (S.D. Tex. 2011) (Ellison, J.)................................................4

*Md. Manor Assocs. v. City of Houston*,
816 F. Supp. 2d 394 (S.D. Tex. 2011) (Rosenthal, J.)..........................................3

*Morgan v. Chapman*,
969 F.3d 238 (5th Cir. 2020) .................................................................................6

*Nash v. Electrospace System, Inc.*,
9 F.3d 401 (5th Cir. 1993) ...................................................................................13

*Newby v. Enron Corp. (In re Enron Corp. Sex., Derivative & ERISA Litig.)*,
761 F. Supp. 2d 504 (S.D. Tex. 2011) (Harmon, J.)............................................12

*Nieto v. San Perlita Indep. Sch. Dist.*,
894 F.2d 174 (5th Cir. 1990) .................................................................................5

*Oliver v. Scott*,
276 F.3d 736 (5th Cir. 2002) .................................................................................4

*Parker v. Missouri City*,
Civ. A. No. H-12-2484, 2014 U.S. Dist. LEXIS 171021 (S.D. Tex. Dec. 10,
2014) (Harmon, J.)...............................................................................................16

*Paul v. Davis*,
424 U.S. 693 (1976)..............................................................................................16

*Richardson v. Avery*,
No. 3:16-CV-2631-M-BH, 2018 U.S. Dist. LEXIS 182589 (N.D. Tex. Oct. 1,
2018) .....................................................................................................................16

*Roberts v. City of Shreveport*,
397 F.3d 287 (5th Cir. 2005) ...............................................................................10

*Rodriguez v. Christus Spohn Health Sys. Corp.*,
874 F. Supp. 2d 635 (S.D. Tex. 2012) (Rainey, J.)..............................................17

*Saucier v. Katz*,
533 U.S. 194 (2001)..............................................................................................19

*Snyder v. Trepagnier,*
    142 F.3d 791 (5th Cir. 1998) ...........................................................................10

*Stewart v. Murphy,*
    174 F.3d 530 (5th Cir. 1999) .............................................................................6

*Tanik v. Southern Methodist Univ.,*
    116 F.3d 775 (5th Cir. 1997) .............................................................................7

*Thompson v. Steele,*
    709 F.2d 381 (5th Cir. 1983) .............................................................................9

*Walker v. Thompson,*
    214 F.3d 615 (5th Cir. 2000) .............................................................................8

*Washington v. Glucksberg,*
    521 U.S. 702 (1997)..........................................................................................17

*Williams v. Town of Delhi,*
    No. 14-043, 2015 U.S. Dist. LEXIS 24173 (W.D. La. Feb. 17, 2015)...................16

*Woods v. Delta Bev. Group, Inc.,*
    274 F.3d 295 (5th Cir. 2001) ...........................................................................14

*Zarnow v. City of Wichita Falls,*
    614 F.3d 161 (5th Cir. 2010) ...........................................................................10

**Statutes**

42 U.S.C. § 1983.................................................1, 2, 4, 5, 6, 7, 9, 10, 15, 16, 17, 19, 20

Civil Rights Act of 1964 Title VII...........................................................7, 8, 14, 20

Tex. Civ. Prac. & Rem. Code section 101.106 .................................................2

Tex. Lab. Code section 408.001 .......................................................................2

Texas Occupations Code section 1701.251 ....................................................11

**Other Authorities**

Federal Rules of Evidence Rule 201.................................................................11

Rule 12(b)(6)...............................................................................................4, 5, 20

## Nature and Stage of the Proceedings

On May 24, 2021, Plaintiffs Liz Gomez, Marissa Sanchez, Felicia McKinney, and Jacquelyn Aluotto filed suit against Harris County and, in their individual capacities, Constable Alan Rosen, Assistant Chief Chris Gore, and Lieutenant Shane Rigdon of Harris County Constable's Office, Precinct One, asserting claims under 42 U.S.C. § 1983 for alleged violations of the Equal Protection and Due Process Clauses of the Fourteenth Amendment.[2] On June 2, 2021, Plaintiffs filed their first amended complaint, the operative pleading, adding Jassmine Huff as a plaintiff,[3] but still failing to state a plausible claim against Alan Rosen and still failing to overcome the presumption of Alan Rosen's immunity from suit.

## Summary of the Grounds for Dismissal

Against Constable Rosen individually, Plaintiffs Gomez, Sanchez, McKinney, and Huff[4] have imagined several causes of action not even supported under the law and Plaintiffs have attempted through only broad, vague, and thus impermissible conclusory allegations to assert violations of the Equal Protection and Due Process Clauses, arising out of Plaintiffs participation in undercover operations and investigations targeting human trafficking and prostitution which Alan Rosen authorized but in which, particularly as to the specific incidents of which Plaintiffs complain, Alan Rosen had no personal involvement. The "clearly established" law simply does not support the *existence* of Plaintiffs' due process claim, and, as to Plaintiffs' equal protection claim, Plaintiff's vague and conclusory allegations are precisely those the Supreme Court, Fifth Circuit, and this Court have held fail to state a plausible claim under both prongs necessary to overcome the legally required presumption of Constable Rosen's immunity, as is Plaintiffs'

---

[2] ECF No. 1.

[3] ECF No. 7.

[4] Plaintiff Aluotto has not asserted any claim against Constable Rosen, Chief Gore, or Lt. Rigdon.

burden.

Plaintiffs Gomez, Sanchez, McKinney, and Huff assert two distinct, vague, and purely conclusory theories suggesting that Constable Rosen *in his supervisory capacity only* subjected Plaintiffs to a sexually hostile work environment and sexual battery which, **without identifying any legal basis,** Plaintiffs claim violate the Fourteenth Amendment to the United States Constitution, **even though Plaintiffs allege no personal involvement on Alan Rosen's part** and the law does not support Plaintiffs' efforts to claim *respondeat superior* liability under § 1983. Not only are Plaintiffs' fantastic, fictional accounts untrue, not one Plaintiff has alleged *any facts* that would state a cognizable claim against Alan Rosen that actually exists in the law.[5]

### Issues Presented

1.  Plaintiffs Gomez, Sanchez, McKinney, and Huff have failed to state a sexually hostile work environment claim against Constable Rosen under the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

2.  Plaintiff McKinney has failed to state a claim for relief against Constable Rosen under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

3.  Even if Plaintiffs Gomez, Sanchez, McKinney, and Huff could state a constitutional claim against Constable Rosen, Plaintiffs' factual allegations fail to meet the heightened pleading standard necessary to overcome the legal presumption of Constable Rosen's qualified immunity.

---

[5] But one glaring example discussed in more detail *infra* is the pure legal fact that, without regard to the fictionalized, sensational allegations, **all** claims of "Sexual Battery" are simply claims of the common law tort of battery. Despite Supreme Court authority rejecting their effort, Plaintiffs attempt, in several separate claims, to "constitutionalize" this common law tort from which Constable Rosen is *statutorily* immune under section 101.106, Tex. Civ. Prac. & Rem. Code. Even if Constable Rosen was not statutorily immune from common law tort claims, Plaintiffs' claims would be barred by section 408.001, Tex. Lab. Code.

## Standard of Review

**a.     Motions to dismiss for failure to state a claim.**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Thus, although the federal pleading requirements are reasonably low, they are real and the threshold for stating a claim for relief requires factual allegations regarding each material element necessary to sustain recovery under an actionable legal theory. *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (5th Cir. 1989). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. A court is not required to accept mere legal conclusions as true. *Id*. Instead, legal conclusions "must be supported by factual allegations." *Id*. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

> Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "shown" – "that the pleader is entitled to relief."

*Id*. (quoting Fed. R. Civ. P. 8(a)(2)) (internal citation omitted). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Md. Manor Assocs. v. City of Houston*, 816 F. Supp. 2d 394, 402 (S.D. Tex. 2011) (Rosenthal, J.) (citing, *Iqbal*, 556 U.S. at 678). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and

plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*.

"When plaintiffs 'have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.'" *Twombly*, 550 U.S. at 570, *accord Iqbal*, 556 U.S. at 680. Important here is the well-settled rule that conclusory allegations or legal conclusions masquerading as factual allegations will not suffice to avoid dismissal. *Fernandez-Montes v. Allied Pilots' Association*, 987 F.2d 278, 284 (5th Cir. 1993). If, based on the facts pleaded and judicially noticed, a successful affirmative defense appears, then dismissal under Rule 12(b)(6) is proper. *Kansa Reinsurance Co., Ltd. v. Cong. Mortgage Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994).

**b.     Claims against governmental officials must meet a heightened pleading standard.**

To state a claim against a governmental official sued in his individual capacity, Plaintiffs must satisfy a heightened pleading standard. *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). *See also, McPeters v. Edwards*, 806 F. Supp. 2d 978, 983 (S.D. Tex. 2011) (Ellison, J.), *aff'd* 464 Fed. Appx. 351 (5th Cir. 2012). Accordingly, the Supreme Court's holding in *Iqbal* has special significance in a case against individual public employees, such as Constable Rosen. "To state a cause of action under § 1983, the plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, **specifying the personal involvement of each defendant**." *Jolly v. Klein*, 923 F. Supp. 931, 943 (S.D. Tex. 1996) (emphasis added) (citing *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992)).

To meet this standard, Plaintiffs' complaint must allege *specific conduct* and *direct actions* of each individual which not only show a constitutional deprivation but also demonstrate the conduct alleged was such that, under clearly established law no reasonable official could have thought *his own conduct* constitutional. *Oliver*, 276 F.3d at 742. *See also, Baker v. Putnal*, 75 F.3d

190, 195 (5th Cir. 1996). Since as to "qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense," *McClendon v. City of Columbia*, 305 F.3d 314, 322 (5th Cir. 2002) (en banc), to avoid a Rule 12(b)(6) dismissal, Plaintiffs must allege particularized facts showing direct conduct of Constable Rosen which, if proven, would defeat his immunity from suit. *Cf., Harmon v. Dallas Cty.*, 927 F.3d 884, 892 (5th Cir. 2019); *Nieto v. San Perlita Indep. Sch. Dist.,* 894 F.2d 174, 178 (5th Cir. 1990).

### Argument & Authorities

It is well-established that "Section 1983 is not itself a source of substantive rights, but rather merely provides a method for vindicating federal rights elsewhere conferred." *Brown v. Bd. of Trs. Sealy Indep. Sch. Dist.*, 871 F. Supp. 2d 581, 596 (S.D. Tex. 2012) (Ellison, J.) (internal quotations omitted) (citing *Albright v. Oliver*, 510 U.S. 266, 271 (1994)). The deprivation of a right found under state law is not sufficient to state a claim under section 1983 as section 1983 does not "constitutionalize" state laws. *Davis v. Scherer*, 468 U.S. 183, 194 (1984). As this Court, Judge Harmon presiding, has held, section 1983 only "provides a cause of action for individuals who have been deprived of their rights, privileges, or immunities **secured by the Constitution and laws of the United States** by a person acting under color of state law." *Gehring v. Harris County*, No. 4:15-cv-00726, 2016 U.S. Dist. LEXIS 7189, *27 (S.D. Tex. Jan. 21, 2016) (internal citation omitted) (emphasis added). Indeed, "the federal courts have repeatedly held that common law and state tort law do not define the scope of liability under § 1983." *Castellano v. Fragozo*, 352 F.3d 939, 948 (5th Cir. 2003) (citation omitted). Thus, to state a claim under section 1983, a plaintiff must allege *facts* that if true would (1) show a violation **of a right secured by the Constitution or laws of the United States** and (2) demonstrate the alleged deprivation was committed by a person acting under color of state law. *Cf., James v. Tex. Collin County*, 535 F.3d 365, 373 (5th

Cir. 2008). "[C]onduct which merely engenders common law tort liability, without infringing on Constitutionally protected interests, is not a sufficient basis to support a cause of action under Section 1983. **Section 1983 simply does not provide a remedy for mere common law torts, even though committed under color of state law."** *Beker Phosphate Corp. v. Muirhead*, 581 F.2d 1187, 1189 (5th Cir. 1978) (emphasis added), *accord Morgan v. Chapman*, 969 F.3d 238, 246-247 (5th Cir. 2020). Simply put, Plaintiff McKinney's claim of "battery" is not a constitutional or federal law claim and therefore not cognizable under section 1983.

Each defendant's actions in a section 1983 case must be considered individually. *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999); *Hernandez v. Tex. Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 883-84 (5th Cir. 2004). Thus, to state a claim, Plaintiffs must allege *facts* sufficient to show unconstitutional – not state law tort – conduct of Constable Rosen individually.

Further, in attempting to do so, Plaintiffs must adhere to well-settled proposition that "[s]upervisory officials cannot be held liable under section 1983 for the actions of subordinates…on any theory of vicarious or *respondeat superior* liability." *Davis ex rel. v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). "Rather, Plaintiffs must show that the conduct of the supervisor[] [itself] denied [Plaintiffs'] [their] constitutional rights," *id*., by "affirmatively participating in the acts that caused the constitutional deprivation, or…implementing unconstitutional policies that causally resulted in the constitutional injury." *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 435 (5th Cir. 2008) (quotation modified). "Because vicarious liability is inapplicable to … § 1983 suits, a plaintiff must plead that ***each*** Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676 (emphasis added). It is not enough "to allege that government officials with no direct contact with a plaintiff are responsible for acts of their subordinates." *Anderson v.*

*Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999) (quotation modified) (citing *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995).

Lastly, Plaintiffs must allege *facts* showing *for each* that the acts constituting *a recognized constitutional deprivation* were intentional, not negligent. *Daniels v. Williams*, 474 U.S. 327, 331-32 (1986). "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity." *Alton v. Tex. A&M Univ.,* 168 F.3d 196, 201 (5th Cir. 1999).

## 1.    Plaintiffs fail to state an equal protection claim for sexual harassment.[6]

Because "Section 1983 and Title VII  are parallel causes of action," *Johnson v. Halstead*, 916 F.3d 410, 417 (5th Cir. 2019) (quotation modified), employment discrimination claims brought under section 1983 are analyzed under the evidentiary framework applicable to claims arising under Title VII of the Civil Rights Act of 1964. *Tanik v. Southern Methodist Univ.*, 116 F.3d 775, 775 (5th Cir. 1997). Thus, to state a claim of sexual harassment under section 1983, a plaintiff must allege facts showing: (1) the employee belongs to a protected class; (2) the employee was subject to unwelcome sexual harassment; (3) the harassment was based on sex; and (4) that the harassment affected a "term, condition, or privilege" of employment. *Cf., Lauderdale v. Tex. Dep't of Crim. Justice*, 512 F.3d 157, 163 (5th Cir. 2007).

"The legal standard for workplace harassment is … high." *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 509 (5th Cir. 2003). For harassment to "affect a term, condition, or privilege of employment," it must be "sufficiently severe or pervasive to alter the conditions of [Plaintiffs']

---

[6] Since "sexual harassment in public employment violate[s] the Equal Protection Clause of the Fourteenth Amendment and is therefore actionable under § 1983," *Lauderdale v. Tex. Dep't of Crim. Justice*, 512 F.3d 157, 166 (5th Cir. 2007) (quotation omitted), Plaintiffs have identified, albeit vaguely and conclusorily, but have still not stated a claim of "a violation of a right secured by the Constitution or laws of the United States," because each fail to allege *facts* under the four requisite elements necessary to state a claim.

employment and create an abusive working environment," *Southard*, 114 F.3d at 554, particularly where, as **Plaintiffs' pleadings here admit**, the alleged "[s]exual harassment…does not culminate in an adverse employment decision." *Indest v. Freeman Decorating*, 164 F.3d 258, 264 (5th Cir. 1999). Merely offensive conduct is not actionable. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). Rather, the court must "view the alleged harassment with common sense, and appropriate sensitivity to social context to determine whether it constitutes conduct which a reasonable person in … [Plaintiffs'] position would find severely hostile or abusive." *EEOC v. Boh Bros. Constr. Co., L.L.C.*, 731 F.3d 444, 460 (5th Cir. 2013) (quoting *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 80 (1998)).[7]

Stated differently, the alleged harassment "must be both objectively and subjectively abusive," *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 325 (5th Cir. 2004), and the court must consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000). Because Title VII is not a general civility code for the American workplace, the alleged "conduct must be extreme to amount to **a change in the terms and conditions of employment**." *Indest*, 164 F.3d at 263 (emphasis added) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

---

[7] Here, the Court should take into consideration that not one Plaintiff claims to have utilized the Constable's Office's open-door reporting policy and procedure to raise any concern before filing suit and not one Plaintiff has found what they claim *only in their lawsuit* to be "hostile" sufficiently severe or pervasive as to motivate any to quit. To be sure, each Plaintiff remains employed with the Constable's Office.

As discussed *supra*, in cases where a plaintiff asserts a section 1983 claim against a defendant in his individual capacity, the plaintiff must "establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation." *Anderson*, 184 F.3d at 443. This Court has repeatedly held a supervisor is not personally liable for the actions of any subordinate when the supervisor had no direct, personal involvement. *See, e.g., Harvey v. Montgomery Cty.*, 881 F. Supp. 2d 785, 801 (S.D. Tex. 2012) (Ellison, J.) (citing *Anderson*, 184 F.3d at 443-44).

"Personal involvement is an essential element of a civil rights cause of action," *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983), yet Plaintiffs do not allege, and it is otherwise undisputed that **Constable Rosen did not "personally participate" or have any direct or personal involvement in any of the conduct of which Plaintiffs complain**.[8] Instead, Plaintiffs' sexual harassment claim against Constable Rosen is based on the Constable's role as supervisor of the Human Trafficking Unit and arises *only* from three conclusory allegations that assert Constable Rosen did no more than allegedly:[9]

- created and oversaw the … unit which subjected untrained subordinate officers to sexual contact from their commanding officers;[10]

- ratified Chief Gore's actions in subjecting employees to abusive, traumatic, and harassing work environments; and

- refused to take proper remedial actions when complaints were raised about the hostile work environment created in the Human Trafficking Unit.

---

[8] ECF No. 7, *passim*. Although Plaintiffs allege "Constable Alan Rosen attended at least one of the[] [complained of] 'parties' personally," *id*. at ¶ 1, Plaintiffs do not allege that Constable Rosen attended any operation or "party" made the basis of Plaintiffs' lawsuit.

[9] *Id*. ¶¶ 115-116

[10] Such an allegation could lead to no more than purely *respondeat superior* liability, yet "[u]nder § 1983, supervisory officials cannot be held liable for the actions of subordinates under any theory of vicarious liability." *Jolly v. Klein*, at 943.

Even taking each of these allegations as true solely for the sake of argument here, not one conclusory allegation supports, let alone states a claim against Constable Rosen based on supervisor liability and none disprove the presumption of his immunity. Indeed, Plaintiffs' claims against the duly elected Constable are undone by Plaintiffs' own pleading admissions[11] and well-established Supreme Court and Fifth Circuit authority on the very limited nature of supervisory liability under section 1983.

## 1.1. Plaintiffs' unsupported "failure to train" theory fails as a matter of law.

To prevail on a failure to train theory, which Plaintiffs seem to assert here, "a plaintiff must demonstrate: (1) that the [supervisor's] training procedures were inadequate, (2) that the [supervisor] was deliberately indifferent in adopting its training policy and (3) that the inadequate training policy directly caused the violations in question." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010) (internal quotations omitted). For evaluation of such a claim, "the focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform." *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998). "[F]or liability to attach based on an 'inadequate training' claim, a plaintiff must allege **with specificity** how a particular training program is deficient." *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005) (emphasis added).[12] "In this inquiry, mere proof that the injury could have been prevented if the officer had received better or additional training cannot, without more, support liability." *Id.* Only when a failure to train an officer actually, *by its very operation*, **causes** an injury may, in certain *very limited circumstances*, it fairly be said to represent a policy for which a governmental

---

[11] *See infra* at pp. 12-15.

[12] Anything less would violate *Iqbal's* prohibition of conclusory pleadings and mere assertions of factually unsupported legal theories.

supervisor may be held individually responsible. *Canton v. Harris*, 489 U.S. 378, 390 (1989*). See also, Brown v. Bryan Cty.*, 219 F.3d 450, 459 (5th Cir. 2000).

Importantly, law enforcement training is not in the hands of any supervisor, but rather the State of Texas. Under Rule 201 of the Federal Rules of Evidence, the Court can and should take judicial notice of Texas statutes which establish that the State statutorily has delegated the Texas Commission on Law Enforcement (TCOLE) the responsibility for establishing law enforcement officer licensing and training standards and providing officer training to all police officers sufficient to prepare them to fulfill the duties entrusted to them, including compliance with the United States and Texas Constitutions.[13] By requiring TCOLE certification for all deputies, Constable Rosen saw to appropriate training of all deputies based on the sufficiency of these statewide statutory standards. *Compare, Baker*, 75 F.3d at 199-200; *Benavides v. County of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992).

## 1.2. Plaintiffs' "refusal to remediate" theory is inapplicable here and, even so, Plaintiffs' theory is belied by Plaintiffs' own pleading admissions.

Plaintiffs contend Constable Rosen in his individual capacity "refused[14] to take **proper** remedial actions when complaints were raised about the hostile work environment created in the Human Trafficking Unit."[15] It is well-established that an *employer* – but not a supervising employee in his individual capacity – may be vicariously liable for "sexual harassment if it knew or should have known of the harassment in question and failed to take prompt remedial action."

---

[13] Specifically, section 1701.251 of the Texas Occupations Code requires that TCOLE "establish and maintain training programs and records for officers." Thus,  under section 1701.253, all Harris County Precinct One Constable's deputies have received "comprehensive education and training program on civil rights…" which "covers the laws of [the state of Texas] and of the United States pertaining to peace officers." Further, there is no allegation Plaintiffs were ever denied any training they requested.

[14] The term "refused" is the very type of threadbare, conclusory allegation, *wholly unsupported by any factual allegation* with which the Plaintiffs' complaint is rife and that the Supreme Court in *Iqbal* made clear deserves no consideration in analyzing whether a complaint states claim.

[15] *Id.*, ¶ 116 (emphasis added).

*Coleman v. Sch. Bd. of Richland Parish*, 418 F.3d 511, 521 n.43 (5th Cir. 2005). *See also, Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 759 (1998). Accordingly, whether Constable Rosen took any *proper* remedial action is not only an inaccurate recitation of the employer liability standard,[16] that standard does not pertain to Plaintiffs' claim against the Constable in his individual capacity and, thus, does nothing to support Plaintiff's claim against Constable Rosen *individually*.

Even if, purely *arguendo*, the Precinct One Constable's Office's remedial actions could be relevant to Plaintiffs' claim against Constable Rosen individually, Plaintiffs' "refusal to remediate" theory is belied by Plaintiffs' own pleading admissions. No Plaintiff alleges she reported any concern, let alone a formal complaint to Constable Rosen directly and, moreover, Precinct One promptly addressed each Plaintiff's concerns and conducted, on its own initiative, a proactive investigation of the Human Trafficking Unit's undercover operations.[17]

Above and beyond Precinct One's proactive investigation, Liz Gomez, for example, alleges that "[f]ollowing her first two operations, Gomez asked to be removed from the undercover team," but also concedes "her request was…granted."[18] Marissa Sanchez *requested and received* a transfer out to the patrol division after Sanchez discussed her concerns regarding the Human Trafficking Unit with Constable Rosen's Chief of Staff.[19] Similarly, Jassmine Huff, who had worked in Precinct One's patrol division before her assignment to the Human Trafficking Unit,

---

[16] To be clear, the correct statement of this element of employer liability is, as quoted *supra*, a "*prompt* remedial action." *Coleman*, 418 F.3d at 521 n.43.

[17] *Id.*, ¶ 14 n.2. The Court may consider Constable Rosen's statement in connection with this motion to dismiss because Plaintiffs have included the statement in their operative pleading and, as Plaintiffs repeatedly contend, the Constable's statement provides information central to Plaintiffs' claims. *See, e.g., Newby v. Enron Corp. (In re Enron Corp. Sex., Derivative & ERISA Litig.)*, 761 F. Supp. 2d 504, 518 (S.D. Tex. 2011) (Harmon, J.) (citation omitted). Indeed, the statement disproves essential elements of both Plaintiffs' hostile work environment claim and Plaintiffs' battery claim against, at the very least, Constable Rosen individually

[18] *Id.*, ¶ 31.

[19] *Id.*, ¶ 45. Sanchez's vague comment that her transfer was to an unidentified position with "less prestigious duties" implies Sanchez's position within the Human Trafficking Unit was, despite Sanchez's complaints, "prestigious."

*requested and received a transfer* back to the patrol division.[20] Having admitted each Plaintiff was assigned *as each requested*, Plaintiffs' own factual admissions belie Plaintiffs' bald and conclusory allegations of "refusal" and the actual facts – which are only what the Court considers under *Iqbal* - are fatal to Plaintiffs' ability state a claim under this element of a *prima facie* case of sexual harassment.

Importantly, when an employer "once informed of allegations of sexual harassment, takes prompt remedial action to protect the claimant, the company may avoid…liability." *Harvill v. Westward Communications, LLC*, 433 F.3d 428, 437 (5th Cir. 2005). "The Fifth Circuit has concluded that…employers taking less drastic measures than termination of the [alleged] harasser took prompt remedial action as a matter of law." *Colbert v. Georgia-Pacific Corp.*, 995 F. Supp. 697, 703 (N.D. Tex. 1998). For example, in *Nash v. Electrospace System, Inc.*, 9 F.3d 401 (5th Cir. 1993), the Fifth Circuit found the employer's prompt investigation and transfer of complainant to a department away from her harasser was a sufficiently prompt remedial response. *Id*. at 404. Accordingly, Plaintiffs' opinions about the propriety of any remedial measures Precinct One implemented are wholly insufficient to support Plaintiffs' supervisor liability claim and, indeed, are not relevant to Plaintiffs' claim at all.

Further, although Felicia McKinney alleges she "and other female deputies protest[ed] and object[ed] to [the undercover] assignment and operation," McKinney **does not claim she or anyone else alleged *sexual harassment or even facts suggesting the same* related to the operation** – she did not – and McKinney completely fails to identify to whom she and the "other female deputies" protested or objected.[21] **It was certainly not Alan Rosen**. At minimum,

---

[20] *Id*., ¶¶ 59, 61.

[21] *Id.*, ¶ 70.

McKinney's allegations fail to identify Constable Rosen's *personal* involvement in any way, because he was not so personally involved as a supervisor to give rise to a claim against him individually under well-settled circuit authority and that of this Court.

To the contrary, as established by the May 24, 2021 "Statement from Constable Alan Rosen regarding lawsuit,"[22] which Plaintiffs admit having adopted them as Plaintiffs' own pleading allegations, having quoted, cited, and linked to their amended complaint,[23] Constable Rosen "**proactively instructed** [Precinct One's] Internal Affairs Division to conduct an investigation" into Plaintiffs' allegations "**even though no one made a formal complaint**."[24] It is well-settled that, in an alleged hostile environment case, the court must determine whether the plaintiff took advantage of preventative or corrective opportunities provided by the employer, no matter whether the alleged harasser is a supervisor or a coworker. *See, Woods v. Delta Bev. Group, Inc*., 274 F.3d 295, 300 (5th Cir. 2001); *Lauderdale*, 512 F.3d at 164-65; *Harvill*, 433 F.3d at 437. Thus, under *Iqbal* each Plaintiff must plead *facts* that show how and when each did so,[25] yet **no Plaintiff alleges such facts here,** except in the most obtuse and conclusory manner.

Whether any Plaintiff actually availed herself of Precinct One's policies and procedures and requested that some unidentified person other than Constable Rosen investigate and remediate that Plaintiff's concerns about purportedly harassing conduct, Plaintiffs have failed to allege facts

---

[22] *See* n.18, *supra*.

[23] ECF No. 7, ¶ 14 n.2.

[24] *Id.* (emphasis added).

[25] Since an employee can "thwart the creation of a hostile work environment" by promptly complaining about harassing conduct, the employee "should not wait as long as it usually takes for a sexually hostile working environment develop … . If the plaintiff complains promptly, the then-incidental misbehavior can be stymied before it erupts into a hostile environment, and no actionable Title VII violation will have occurred." *Indest*, 164 F.3d at 265. As Constable Rosen's statement – which Plaintiff incorporate into their complaint – shows, **no Plaintiff complained – and certainly none contend they complained to Constable Rosen himself – of a supposed hostile work environment until Plaintiffs filed suit**.

showing the Precinct One Constable's Office, let alone Constable Rosen personally, knew of any complaints – Plaintiffs do not allege it because Plaintiffs know full well that Alan Rosen was not aware of any complaints until Plaintiffs filed suit - and refused to take prompt remedial action; a necessary element of Plaintiffs' harassment claim.

### 1.3. Plaintiffs' "ratification" theory provides no basis for a claim against Constable Rosen.

Plaintiffs' section 1983 claim against Constable Rosen also relies on Plaintiffs' vague and unsupported theory that Constable Rosen "ratified"[26] Chief Gore's actions,[27] but this Court has found that, while "ratification" is a narrow basis for potential *municipal* liability – the Fifth Circuit appears to have approved it once and rejected it ever since[28] – this Court has found there appear to be "no cases that impose liability on a supervisor based on ratification." *Hobart v. City of Stafford*, 916 F. Supp. 2d 783, 799 (S.D. Tex. 2013) (Ellison, J.). Thus, it is not surprising Plaintiffs fail to identify any legal basis for such a claim because none exists to support this claim. To be sure, even if the Court were inclined to accept Plaintiffs' suggestion to invent such a cause of action, no clearly established law could vitiate immunity based on such a novel claim.

### 1.4. Plaintiffs cannot assert a supervisor liability claim against Constable Rosen because Plaintiffs fail to state a claim against Chief Gore or Lt. Rigdon.

As discussed in Chief Gore and Lt. Rigdon's motion to dismiss,[29] Plaintiffs have failed to state a claim for sexual harassment against Chief Gore or Lt. Rigdon. Without such a claim, Plaintiffs cannot as a matter of law assert a section 1983 claim based on even the narrow scope of supervisory liability against Constable Rosen. Like governmental liability claims, "[s]upervisory

---

[26] A similarly conclusory statement untethered to any factual allegations as required by *Iqbal* to even be regarded by the Court. Rather, under *Iqbal*, it must be ignored.

[27] ECF No. 7, ¶ 116.

[28] *C.f., Coon v. Ledbetter,* 780 F.2d 1158, 1161 (5th Cir. 1986).

[29] *See* Chief Gore and Lt. Rigdon's Motion to Dismiss, filed contemporaneously with this motion.

liability claims ... require an underlying constitutional violation." *Williams v. Town of Delhi*, No.

14-043, 2015 U.S. Dist. LEXIS 24173, *7 (W.D. La. Feb. 17, 2015). *See also, Richardson v. Avery,*

No. 3:16-CV-2631-M-BH, 2018 U.S. Dist. LEXIS 182589, *9 n.8 (N.D. Tex. Oct. 1, 2018).

**2.      Felicia McKinney has not and cannot as a matter of law state a due process claim for "sexual battery."**

Nothing in the reported jurisprudence suggests allegations of "sexual battery" - a common

law tort claim arising only under state law - allegedly committed between fellow employees is

actionable as a constitutional violation. To be sure, McKinney fails to identify from where springs

this novel theory of section 1983 liability, and McKinney certainly fails in her burden to identify

"clearly established law" creating, let alone defining the contours, of such a *merely alleged* cause

of action.

The United States Supreme Court has repeatedly rejected the idea that "the Due Process

Clause of the Fourteenth Amendment and § 1983 make actionable many wrongs inflicted by

government employees which had heretofore been thought to give rise only to state-law tort

claims." *Paul v. Davis*, 424 U.S. 693, 699 (1976), *accord Collins v. City of Harker Heights*, 916

F.2d 284, 286 (5th Cir. 1990). Rather, the Supreme Court has made clear that;

> our Constitution deals with the large concerns of the governors and the governed,
> but it does not purport to supplant traditional tort law in laying down rules of
> conduct to regulate liability for injuries that attend living together in society. The
> Supreme Court has previously rejected reasoning that "would make of the
> Fourteenth Amendment a font of tort law to be superimposed upon whatever
> systems may already be administered by the states."

*Daniels v. Williams*, 474 U.S. 327, 332 (1986) (quotation modified). Accordingly, this Court has

*repeatedly* held it is clear that, as a matter of law, "**state-law claims for assault and battery may**

**not proceed under § 1983**." *Cf., Parker v. Missouri City*, Civ. A. No. H-12-2484, 2014 U.S. Dist.

LEXIS 171021, *36 (S.D. Tex. Dec. 10, 2014) (Harmon, J.) (emphasis added); *George v. Harris*

*Cty.*, Civ. A. No. H-10-3235, 2012 U.S. Dist. LEXIS 94318, *25 (S.D. Tex. July 9, 2012) (Rosenthal, J.) (citing *Smith v. Spina*, 477 F.2d 1140, 1143-44 (3d Cir. 1973)).

If McKinney could even arguably pursue her common law battery claim under section 1983, McKinney's allegations would not survive dismissal because, even though the Due Process Clause protects an individual's right to bodily integrity, *Washington v. Glucksberg*, 521 U.S. 702, 719-20 (1997), the Fifth Circuit has held only "an assault of an egregious nature, whether physical or sexual, can rise to the level of a substantive due process violation under the Constitution." *Rodriguez v. Christus Spohn Health Sys. Corp.*, 874 F. Supp. 2d 635, 644 (S.D. Tex. 2012) (Rainey, J.) (citing *Doe v. Rains County Indep. Sch. Dist.*, 66 F.3d 1402, 1406-07 (5th Cir. 1995)). To be sure, the substantive component of the due process clause is violated "only when it can properly be characterized as arbitrary, or conscience shocking, **in a constitutional sense**." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) (quotations omitted) (emphasis added). "Put another way, 'a typical state-law tort claim' does not rise to the level of a constitutional tort that violates substantive due process.'" *Chestang v. Alcorn State Univ.*, 820 F. Supp. 2d 772, 779 (S.D. Miss. 2011) (quoting *Collins*, 503 U.S. at 128). Moreover, "psychological injury alone does not constitute a violation of bodily integrity as contemplated under the Fourteenth Amendment," nor does "freedom from false stigmatization…constitute a protected liberty interest under the Fourteenth Amendment." *Doe v. Silsbee Indep. Sch. Dist.*, 402 Fed. Appx. 852, 854 (5th Cir. 2010).

Here, McKinney alleges, quite inexplicably, in pertinent part, that Constable Rosen, Chief Gore, and Lt. Rigdon "violated McKinney's rights" when Constable Rosen – and only Constable Rosen – purportedly did no more than "order[] an operation[30] in which Felicia McKinney was sent into a massage parlor with the express intention of having her be sexually assaulted by a suspected

---

[30] "Ordering" an operation is not the type of personal involvement necessary to state a claim of supervisory liability.

rapist," and, in doing so, "exposed McKinney to this assault with the intent that she be assaulted so that a public arrest could be made."[31] Since McKinney makes no allegation that Constable Rosen directly ordered McKinney to participate in that investigation, for which Constable Rosen was not even present, McKinney's efforts to state a claim against Constable Rosen as a supervisor fall obviously short in light of well-established Fifth Circuit precedent.

Even accepting McKinney's vague allegations as true, McKinney's battery claim against Constable Rosen also fails because the "battery" McKinney complains of was not perpetrated by Constable Rosen and Constable Rosen had no control over the criminal who perpetrated McKinney's alleged battery.[32] Even if Constable Rosen *intended* for McKinney to be injured, under "foundational tort law principles,…the intentional tort of battery lies where the offensive contact is intentional, not the resulting injury." *Estate of Aguirre v. City of San Antonio*, 995 F.3d 395, 422 (5th Cir. 2021). In other words, **since McKinney admits** the individual who assaulted McKinney was not Constable Rosen, McKinney has not stated and cannot state a claim for battery against Constable Rosen.

**3.      Constable Rosen is immune from all Plaintiffs' claims.**

Even if, *arguendo*, Plaintiffs could sue Constable Rosen, Plaintiffs fail to overcome the presumption of Constable Rosen's immunity from suit. "Public officials acting within the scope of their official duties are shielded from civil liability by the qualified immunity doctrine." *Kipps v. Caillier*, 197 F.3d 765, 768 (5th Cir.), *cert. den'd.*, 531 U.S. 816 (2000) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 815-19 (1982)). "A claim of [qualified] immunity must be resolved at the earliest possible stage of litigation because it entails an entitlement to immunity from suit and

---

[31] ECF No. 7, ¶¶ 184-86.

[32] If McKinney's novel allegation could state a claim against a law enforcement supervisor, what law enforcement officer injured by a suspect would not have a claim against their supervisor(s) for the tort committed by a criminal?

not merely a defense to liability." *Gunaca v. Texas*, 65 F.3d 467, 473 (5th Cir. 1995) (citing *Hunter v. Bryant*, 502 U.S. 224, 226 (1991)). A governmental official performing discretionary functions in the course of his official duties "is entitled to qualified immunity if his 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Longoria v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 264 (5th Cir. 2019) (quoting *Harlow*, 457 U.S. at 818).

Because it is Plaintiffs' burden to disprove immunity, *Backe v. Leblanc*, 691 F.3d 645 (5th Cir. 2012), to avoid dismissal, Plaintiffs must allege, at the motion to dismiss stage, facts that overcome qualified immunity by showing that Constable Rosen committed an unconstitutional act and that Constable Rosen violated "clearly established law." As discussed *supra*, Plaintiffs have failed to satisfy the first prong of overcoming qualified immunity. As discussed *supra*, Plaintiffs have failed to state a plausible Fourteenth Amendment equal protection or due process claim against Constable Rosen and they cannot as a matter of law – at least on the facts they have twice-alleged – do so. Further, Plaintiffs do not assert a single factual allegation of personal involvement by Constable Rosen, as section 1983 requires. Thus, Plaintiffs have failed to sufficiently plead the existence of any constitutional violation. But, Plaintiffs also fail as to the second element of their burden to disprove immunity.

Even assuming Plaintiffs could have asserted a viable constitutional claim – they cannot - it is Plaintiffs' burden to allege detailed facts to show Constable Rosen was on notice, through judicial decisions, that his actions were clearly unlawful such that no reasonable constable could have thought Constable Rosen's alleged conduct was legal. *See, e.g., Saucier v. Katz*, 533 U.S. 194, 202 (2001); *Blackwell v. Barton*, 34 F.3d 298, 303 (5th Cir. 1994) (quoting *Pfannstiel v. Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990)). "While a plaintiff seeking to overcome qualified

immunity need not present a case directly on point, existing precedent must have placed the statutory or constitutional question beyond debate[.]" *Anderson v. Valdez*, 913 F.3d 472, 476 (5th Cir. 2019) (emphasis added) (internal quotations and citations omitted); *see also Longoria*, 942 F.3d at 268. Thus, as to their imagined claims of "sexual battery under § 1983" as well as their Title VII claims brought under § 1983 – likely to avoid EEOC investigative scrutiny – each Plantiff must identify "clearly established" law sufficient to show that no constable – not one – could reasonably believe Constable Rosen's actions as to each Plaintiff were lawful.

While Plaintiffs' complaint is chock-full of scurrilous, largely fictional, conclusory allegations, Plaintiffs have failed to even address their burden to set forth *factual* allegations which disprove the presumption of Constable Rosen's immunity by showing that no reasonable constable could have thought Constable Rosen's conduct was lawful. Thus, even if the Court finds Plaintiffs state any section 1983 claim, the Court must still dismiss Plaintiffs' claims against Constable Rosen based on the presumption of his immunity from suit, which Plaintiffs fail to disprove.

### Prayer

Because Plaintiffs Liz Gomez, Marissa Sanchez, Felicia McKinney, and Jassmine Huff have failed to plead facts supporting a plausible claim for relief, the Court should dismiss Plaintiffs' claims against Constable Alan Rosen under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Dated: June 29, 2021

Respectfully submitted,

**Lewis Brisbois Bisgaard & Smith, LLP**

*/ s / William S. Helfand*
William S. Helfand
Attorney-In-Charge
Texas Bar No. 09388250
S.D. Tex. Bar No. 8791
bill.helfand@lewisbrisbois.com
Sean O'Neal Braun
Texas Bar No. 24088907
S.D. Tex. Bar No. 2210748
sean.braun@lewisbrisbois.com
24 Greenway Plaza, Suite 1400
Houston, Texas 77046
(713) 659-6767
(713) 759-6830 (Fax)

**-and-**

**The Hall Law Group, PLLC**

*/s/ Benjamin L. Hall, III*
Benjamin L. Hall, III
State Bar No. 08743745
S.D. Tex. Bar No. 8787
530 Lovett Blvd.
Houston, Texas 77006
(713) 942-9600
(713) 942-9566 (Fax)
bhall@bhalllawfirm.com

**Attorneys for Constable Alan Rosen**

**Certificate of Service**

I hereby certify that on June 29, 2021, I electronically filed the foregoing document with

using the CM/ECF system, and a copy of this filing has been forwarded to all counsel of record in

accordance with the ECF local rules.

/s/ *William S. Helfand*
William S. Helfand