**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| LIZ GOMEZ, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:21-CV-01698 |
| | § | |
| HARRIS COUNTY, TEXAS, et al., | § | |
| | § | |
| Defendants. | § | |

# DEFENDANT HARRIS COUNTY'S
# MOTION FOR JUDGMENT ON THE PLEADINGS

# TABLE OF CONTENTS

Page

SUMMARY OF THE ARGUMENT ........................................................... 1

NATURE AND STAGE OF THE PROCEEDINGS ...................................... 2

ISSUES AND STANDARD OF REVIEW ................................................... 4

ARGUMENT AND AUTHORITIES ......................................................... 5

I.    The *Monell* Standard for Liability Under Section 1983 ................... 5

     A.    Culpability — A Specific Municipal Policy Adopted with
        Deliberate Indifference to a Known Consequence of
        Constitutional Violations .......................................................... 6

           1.    Official Policy ............................................................. 7

           2.    Deliberate Indifference ................................................ 8

     B.    Causation — The Policy Must Have Been the Moving Force of the
        Constitutional Violation ............................................................ 9

     C.    The Violation — Only Constitutional Rights Are Covered ................. 9

II.   The Court's Prior Dismissal of the Supervisory Liability Claims
     Against Constable Rosen Necessitates Dismissal of Counts 2, 5, 7, and 8
     Against Harris County ...................................................................... 10

     A.    Supervisory Liability and Municipal Liability Involve the Same
        Elements of Proof ................................................................... 11

     B.    Counts 2, 5, 7, and 8 Against Harris County Are Based Upon the
        Same Alleged Conduct by Constable Rosen that the Court
        Determined Was Insufficient for Supervisory Liability ................... 12

III.  Even if the Court Had Not Already Decided the Issue, None of Counts
     2, 5, 7, or 8 State Viable Claims Against Harris County ................... 16

     A.    Count 2 - The Deputy Plaintiffs' Section 1983 Claims for
        Violation of Equal Protection through Sexual Harassment Do
        Not Satisfy *Monell* .............................................................. 16

           1.    No Municipal Policy ................................................... 17

           2.    No Moving Force ........................................................ 26

i

3.    No Constitutional Violation.........................................................30

B.    Count 5 - The Deputy Plaintiffs' Claims Against Harris County
      for Violation of Substantive Due Process Based on Sexual Battery
      by Chief Gore and Lieutenant Rigdon Do Not Satisfy *Monell*...........37

      1.    No Municipal Policy ........................................................37

      2.    No Moving Force.............................................................38

      3.    No Constitutional Violation.............................................39

C.    Count 7 - Plaintiff McKinney's Claim for Violation of
      Substantive Due Process Based on Sexual Battery by a Third-
      Party Criminal Does Not Satisfy *Monell* .................................41

      1.    No Municipal Policy ........................................................42

      2.    No Moving Force.............................................................44

      3.    No Constitutional Violation.............................................45

D.    Count 8 — The Deputy Plaintiffs' Claim for "Violation of the
      Right to Equal Protection By Loss of Bodily Integrity" Is Not
      Countenanced by the Fourteenth Amendment ...................................47

IV.   Count 9 - The Deputy Plaintiffs Do Not State a Claim for Retaliation........48

A.    The Fourteenth Amendment Does Not Protect Speech.....................48

B.    The Deputy Plaintiffs Have Not Stated a First Amendment
      Claim ...........................................................................49

      1.    No Policymaker or Municipal Policy ...........................................49

      2.    No Constitutional Violation.............................................50

V.    Count 10 - Plaintiff Aluotto Does Not State A Claim For Retaliation .........54

      1.    No Policymaker or Municipal Policy ...........................................55

      2.    No Constitutional Violation.............................................55

      a.    The Speech Is Not Protected Because It Was Made
            Pursuant to Job Duties....................................................55

      b.    No Timeline Sufficient to Infer Motivation ...............................58

CONCLUSION.............................................................................60

EMF_US 89669843v6

# TABLE OF AUTHORITIES

**Page(s)**

<span style="font-variant:small-caps">CASES</span>

*Albright v. Oliver,*
    510 U.S. 266 (1994) .................................................................... 10

*Alvarado v. Tex. Rangers,*
    492 F.3d 605 (5th Cir. 2007) ...................................................... 52

*Andrews v. Fowler,*
    98 F.3d 1069 (8th Cir. 1996) ...................................................... 24

*Baker v. City of Arlington,*
    No. 4:20-CV-00385-P, 2020 WL 6063311 (N.D. Tex. Oct. 14, 2020).................... 19

*Barnett v. Boeing Co.,*
    306 F. App'x 875 (5th Cir. 2009) ............................................... 34

*Barney v. Pulsipher,*
    143 F.3d 1299 (10th Cir. 1998) ................................................. 23

*Bd. of Comm'rs of Bryan Cnty. v. Brown,*
    520 U.S. 397 (1997) ............................................................ 6, 8

*Boston v. Harris Cnty.,*
    No. Civ. A. H-11-1566, 2014 WL 1275921 (S.D. Tex. Mar. 26, 2014) .................. 8

*Bowden v. Jefferson Cnty.,*
    676 F. App'x 251 (5th Cir. 2017) .............................................. 15

*Breaux v. City of Garland,*
    205 F.3d 150 (5th Cir. 2000) .................................................. 52, 53

*Brown v. Callahan,*
    623 F.3d 249 (5th Cir. 2010) ..................................................... 8

*Brumfield v. Hollins,*
    551 F.3d 322 (5th Cir. 2008) ..................................................... 8

EMF_US 89669843v6

*Butler v. Ysleta Indep. Sch. Dist.*,
   161 F.3d 263 (5th Cir. 1998) ..................................................... 32

*Caleb v. Grier*,
   598 F. App'x 227 (5th Cir. 2015) ............................................... 56

*Cancino v. Cameron Cnty.*,
   No. 1:18-CV-135, 2018 WL 6573147 (S.D. Tex. Dec. 13, 2018) ............................ 46

*Cervantez v. Bexar Cnty. Civil Serv. Comm'n*,
   99 F.3d 730 (5th Cir. 1996) ....................................................... 30

*City of Canton v. Harris*,
   489 U.S. 378 (1989) ......................................................... 8, 9, 21

*Clark Cnty. Sch. Dist. v. Breeden*,
   532 U.S. 268 (2001) ............................................................. 58

*Cnty. of Sacramento v. Lewis*,
   523 U.S. 833 (1998) .......................................................... 39, 40

*Colle v. Brazos Cnty.*,
   981 F.2d 237 (5th Cir. 1993) .................................................. 7, 42

*Colson v. Grohman*,
   174 F.3d 498 (5th Cir. 1999) ..................................................... 52

*Connick v. Thompson*,
   563 U.S. 51 (2011) ............................................................ 7, 21

*Corn v. Mississippi Dep't of Pub. Safety*,
   954 F.3d 268 (5th Cir. 2020) ..................................................... 55

*Cozzo v. Tangipahoa Parish Council*,
   279 F.3d 273 (5th Cir. 2002) ..................................................... 11

*Craine v. Alexander*,
   756 F.2d 1070 (5th Cir. 1985) .................................................... 29

*Crawford v. City of Houston*,
   260 F. App'x 650 (5th Cir. 2007) ................................................. 27

iv

*Culbertson v. Lykos,*
    790 F.3d 608 (5th Cir. 2015) ........................................................... 50, 51, 54

*Davila v. Webb Cnty.,*
    No. 5:12-CV-42, 2014 WL 12600791 (S.D. Tex. Sept. 23, 2014) ............................ 20

*Davis v. McKinney,*
    518 F.3d 304 (5th Cir. 2008) ........................................................... 56

*Deleon v. Cantrell,*
    No. 7:16-CV-00038-O-BP, 2017 WL 11645768 (N.D. Tex. July 19,
    2017) ........................................................... 28, 44

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.,*
    489 U.S. 189 (1989) ........................................................... 45

*Doe v Harris Cnty. Precinct Six Constable Sylvia Trevino,*
    452 F. Supp. 3d 548 (S.D. Tex. 2020) ........................................................... 13

*Doe v. Hillsboro Indep. Sch. Dist.,*
    81 F.3d 1395 (5th Cir. 1996) ........................................................... 5

*Doe v. Marion Indep. Sch. Dist.,*
    No. SA-17-CV-01114-OLG, 2018 WL 6272036 (W.D. Tex. Nov. 29,
    2018) ........................................................... 37

*Doe v. MySpace, Inc.,*
    528 F.3d 413 (5th Cir. 2008) ........................................................... 4

*Doe v. Taylor Indep. Sch. Dist.,*
    15 F.3d 443 (5th Cir. 1994) ........................................................... 11

*Drain v. Galveston Cnty.,*
    979 F. Supp. 1101 (S.D. Tex. 1997) ........................................................... 15

*Drury v. Volusia Cnty.,*
    No. 6:10-cv-1176-Orl-28DAB, 2012 WL 162362 (M.D. Fla. Jan. 19,
    2012) ........................................................... 22

*Doe v. Edgewood Indep. Sch. Dist.,*
    964 F.3d 351 (5th Cir. 2020) ........................................................... 28, 42, 44

v

*Equal Emp. Opportunity Comm'n v. Boh Bros. Constr. Co., L.L.C.,*
731 F.3d 444 (5th Cir. 2013) .................................................................... 32

*Faragher v. City of Boca Raton,*
524 U.S. 775 (1998) .................................................................................. 31

*Frazier v. Sabine River Auth. La.,*
509 F. App'x 370 (5th Cir. 2013) ............................................................. 36

*Fuentes v. Nueces Cnty.,*
689 F. App'x 775 (5th Cir. 2017) ............................................................. 26

*Gagne v. City of Galveston,*
671 F. Supp. 1130 (S.D. Tex. 1987) ......................................................... 29

*Garcetti v. Ceballos,*
547 U.S. 410 (2006) ............................................................................. 55, 56

*Gentilello v. Rege,*
627 F.3d 540 (5th Cir. 2010) .................................................................. 4, 5

*Gibson v. Potter,*
264 F. App'x 397 (5th Cir. 2008) ............................................................. 35

*Harris v. Forklift Sys.,*
510 U.S. 17 (1993) .................................................................................... 32

*Harrison v. Lilly,*
854 F. App'x 554 (5th Cir. 2021) ............................................................. 57

*Hawkland v. Hall,*
860 F. App'x 326 (5th Cir. 2021) ............................................................. 55

*Holland v. City of Houston,*
41 F. Supp. 2d 678 (S.D. Tex. 1999) ........................................................ 29

*Integrity Collision Ctr. v. City of Fulshear,*
837 F.3d 581 (5th Cir. 2016) .................................................................... 37

*Johnson v. City of San Antonio,*
273 F.3d 1094 (5th Cir. 2001) (unpublished) .......................................... 53

EMF_US 89669843v6

*Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*,
379 F.3d 293 (5th Cir. 2004) ............................................................ 6, 9, 20

*Johnson v. Halstead*,
916 F.3d 410 (5th Cir. 2019) ............................................................ 56

*Keenan v. Tejeda*,
290 F.3d 252 (5th Cir. 2002) ............................................................ 49

*Khansari v. City of Houston*,
14 F. Supp. 3d 842 (S.D. Tex. 2014) ................................................ 26

*Kline ex rel. Arndt v. Mansfield*,
255 F. App'x 624 (3d Cir. 2007) ...................................................... 24

*Lauderdale v. Tex. Dep't of Crim. Just.*,
512 F.3d 157 (5th Cir. 2007) ............................................................ 31

*LeMaire v. La. Dep't of Transp. & Dev.*,
480 F.3d 383 (5th Cir. 2007) (DeMoss, J., concurring) .................... 36

*Lozman v. City of Riviera Beach*,
138 S. Ct. 1945 (2018) ...................................................................... 49

*Lyons v. Katy Indep. Sch. Dist.*,
964 F.3d 298 (5th Cir. 2020) ............................................................ 58

*Magee v. Covington Cnty. Sch. Dist. ex rel. Keys.*,
675 F.3d 849 (5th Cir. 2012) ........................................... 38, 39, 45, 47

*Marchman v. Crawford*,
726 F. App'x 978 (5th Cir. 2018) ...................................................... 52

*Matican v. City of New York*,
524 F.3d 151 (2d Cir. 2008) ....................................................... 40, 43

*McClendon v. City of Columbia*,
305 F.3d 314 (5th Cir. 2002) ............................................................ 46

*McIntosh v. Smith*,
690 F. Supp. 2d 515 (S.D. Tex. 2010) .............................................. 28

*Meritor Sav. Bank, FSB v. Vinson,*
    477 U.S. 57 (1986) ................................................................................ 31, 34

*Milam v. City of San Antonio,*
    113 F. App'x 622 (5th Cir. 2004) ................................................................. 30

*Milligan v. City of Newport News,*
    743 F.2d 227 (4th Cir. 1984) ....................................................................... 42

*Monell v. Dep't of Social Services,*
    436 U.S. 658 (1978) ........................................................................... 5, 6, 7

*Morgan v. Chapman,*
    969 F.3d 238 (5th Cir. 2020) ......................................................................... 9

*Paul v. Davis,*
    424 U.S. 693 (1976) ..................................................................................... 9

*Paul v. Northrop Grumman Ship Sys.,*
    309 F. App'x 825 (5th Cir. 2009) ................................................................. 34

*Peterson v. City of Fort Worth,*
    588 F.3d 838 (5th Cir. 2009) ................................................................. 25, 43

*Pickens v. Harris Cnty.,*
    No. CIV.A. H-05-2978, 2006 WL 3175079 (S.D. Tex. Nov. 2, 2006) ................... 22

*Piotrowski v. City of Houston,*
    237 F.3d 567 (5th Cir. 2001) .............................................................. *passim*

*Plotkin v. IP Axess Inc.,*
    407 F.3d 690 (5th Cir. 2005) ......................................................................... 5

*Quinn v. Guerrero,*
    863 F.3d 353 (5th Cir. 2017) ....................................................................... 26

*Rhode v. Denson,*
    776 F.2d 107 (5th Cir. 1985) ....................................................................... 15

*Roberts v. City of Shreveport,*
    397 F.3d 287 (5th Cir. 2005) ........................................................... 11, 21, 23

EMF_US 89669843v6

*Rodriguez v. Christus Spohn Health System Corp.*,
   874 F. Supp. 2d 635 (S.D. Tex. 2012) ............................................................... 25, 47

*Rodriguez v. City of Corpus Christi*,
   687 F. App'x 386 (5th Cir. 2017) ............................................................... 56

*Rountree v. Dyson*,
   892 F.3d 681 (5th Cir. 2018) ............................................................... 33

*Samples v. Harris Cnty.*,
   No. CV H-16-0829, 2016 WL 5105040 (S.D. Tex. Sept. 20, 2016) ........................ 27

*Shelton v. Bonham Indep. Sch. Dist.*,
   No. 4:17-CV-00764, 2018 WL 2236924 (E.D. Tex. May 16, 2018) ...................... 55

*Shepherd v. Comptroller of Pub. Accts. of Tex.*,
   168 F.3d 871 (5th Cir. 1999) ............................................................... 36

*Skidmore v. Precision Printing & Packaging, Inc.*,
   188 F.3d 606 (5th Cir. 1999) ............................................................... 43, 44

*Skyy v. City of Arlington*,
   712 F. App'x 396 (5th Cir. 2017) ............................................................... 29

*Snyder v. Trepagnier*,
   142 F.3d 791 (5th Cir. 1998) ............................................................... 18, 23, 24

*Southard v. Tex. Bd. of Crim. Just.*,
   114 F.3d 539 (5th Cir. 1997) ............................................................... 11

*Spiller v. City of Tex. City, Police Dep't*,
   130 F.3d 162 (5th Cir. 1997) ............................................................... 37

*St. Clair-Sears v. Lifechek Staff Servs., Inc.*,
   No. 4:12-CV-52, 2013 WL 4487531 (S.D. Tex. May 30, 2013) ............................ 35

*Stevens v. City of Bridgeport*,
   607 F. Supp. 2d 342 (D. Conn. 2009) ............................................................... 22

*Turner v. Baylor Richardson Med. Ctr.*,
   476 F.3d 337 (5th Cir. 2007) ............................................................... 36

ix

*Wallace v. Tex. Tech Univ.,*
   80 F.3d 1042 (5th Cir. 1996) ................................................................. 30

*Walton v. Alexander,*
   44 F.3d 1297 (5th Cir. 1995) (en banc) ................................................. 46

*Webster v. City of Houston,*
   735 F.2d 838 (5th Cir. 1984) (en banc) ................................................... 7

*Whitley v. Hanna,*
   726 F.3d 631 (5th Cir. 2013) ................................................. 42, 43, 46, 47

*Williams v. Dallas Indep. Sch. Dist.,*
   480 F.3d 689 (5th Cir. 2007) ................................................................. 56

*World Wide Street Preachers Fellowship v. Town of Columbia,*
   591 F.3d 747 (5th Cir. 2009) ................................................................. 25

*Young v. City of Houston,*
   599 F. App'x 553 (5th Cir. 2015) ........................................................... 29

*Young v. City of Providence ex rel. Napolitano,*
   404 F.3d 4 (1st Cir. 2005) ..................................................................... 22

*Zarnow v. City of Wichita Falls,*
   614 F.3d 161 (5th Cir. 2010) ....................................................... 8, 26, 42

FEDERAL STATUTES

42 U.S.C. § 1983 .............................................................................. passim

42 U.S.C. § 2000e–2(a)(1) ...................................................................... 30

EMF_US 89669843v6

## SUMMARY OF THE ARGUMENT

Five Plaintiffs have sued Harris County under 42 U.S.C. § 1983 for alleged constitutional violations stemming from their work for Harris County Constable Precinct One's human trafficking unit, which conducts undercover sting operations in which deputies pose as prostitutes and johns in order to apprehend criminals engaged in sex trafficking.[1] Plaintiffs claim Precinct One Assistant Chief Chris Gore and Lieutenant Sean Rigdon sexually harassed and abused them during the undercover stings pursuant to the alleged policies, practices, and inadequate training of Precinct 1 Constable Alan Rosen.

The Court has already dismissed the claims against Constable Rosen as insufficient to establish supervisory liability under section 1983. And Plaintiffs have voluntarily dropped their claims against Chief Gore and Lieutenant Rigdon without any settlement.

All that remains are six claims against Harris County. But those, too, must be dismissed for three reasons:

- Four of the six claims (Counts 2, 5, 7, and 8) against Harris County rest on the same allegations of conduct by Constable Rosen — a purported policymaker of Harris County — that the Court found inadequate to support supervisory liability, which involves the same elements of proof as municipal liability;

---

[1] Dkt. 7 at ¶¶ 13–14, ¶ 125.

- Even if the Court had not already decided the issue, an analysis of Plaintiffs' First Amended Complaint ("Complaint") reveals no basis for municipal liability on the part of Harris County for Counts 2, 5, 7 and 8; and

- Plaintiffs' other two claims against Harris County – Counts 9 and 10 for alleged retaliation in violation of the First Amendment — fail because no County policymaker or policy is identified as the source of retaliation, the speech at issue is not protected, and there is no adverse employment action.

The pleadings have closed and Plaintiffs' Complaint does not support liability against Harris County. The Court should therefore dismiss the remaining claims in this case pursuant to Rule 12(c).

## NATURE AND STAGE OF THE PROCEEDINGS

Harris County is the only defendant remaining in this suit. Originally, Plaintiffs also sued Precinct One Constable Alan Rosen, Chief Chris Gore, and Lieutenant Shane Rigdon in their individual capacities.[2] The claims against Constable Rosen were based upon a theory of supervisory liability, while the claims against Chief Gore and Lieutenant Rigdon were based upon personal involvement in the alleged violation of Plaintiffs' rights.

The individual defendants filed 12(b)(6) motions to dismiss.[3] After full briefing, this Court dismissed all claims against Constable Rosen with prejudice,[4]

---

[2] Dkt. 7.

[3] Dkt. 16 (Rosen); Dkt. 17 (Gore and Rigdon).

[4] Dkt. 29.

2

but denied Chief Gore and Lieutenant Rigdon's motions to dismiss. After Chief Gore and Lieutenant Rigdon appealed,[5] Plaintiffs voluntarily dismissed all claims against them – with no settlement.[6]

The remaining claims against Harris County consist of six causes of action asserted by three groups of Plaintiffs:

- Plaintiffs Liz Gomez, Marissa Sanchez, Felicia McKinney, and Jassmine Huff (the "Deputy Plaintiffs") collectively assert four claims against Harris County:

  - Count 2 for alleged violation of the Fourteenth Amendment right to equal protection through sexual harassment by Chief Gore and Lieutenant Rigdon;

  - Count 5 for alleged violation of the Fourteenth Amendment substantive due process right to bodily integrity through sexual battery by Chief Gore and Lieutenant Rigdon;

  - Count 8 for alleged violation of the Fourteenth Amendment right to equal protection by Chief Gore and Lieutenant Rigdon; and

  - Count 9 for alleged retaliation for constitutionally protected speech.

- Plaintiff Felicia McKinney separately brings Count 7 for alleged violation of the Fourteenth Amendment substantive due process right to bodily integrity based on sexual battery by a criminal third party; and

- Plaintiff Jacquelyn Aluotto brings Count 10 for alleged retaliation for constitutionally protected speech.

---

[5]   Dkt. 31.

[6]   Dkt. 52.

EMF_US 89669843v6

Aside from the exchange of initial disclosures, no discovery has occurred in this case. No depositions have been noticed and no document requests or interrogatories have been served. Given the status of the proceedings and the absence of any viable claim against Harris County, dismissal pursuant to Rule 12(c) is proper and would serve the interests of justice.

## ISSUES AND STANDARD OF REVIEW

The issues before this Court are:

- Whether the Court's prior dismissal of Plaintiffs' supervisory liability claims against Constable Rosen precludes a finding of municipal liability on Counts 2, 5, 7, and 8 against Harris County;

- If not, whether Counts 2, 5, 7, and 8 plausibly allege that any policy of Constable Rosen, as an alleged Harris County policymaker, was the moving force behind any violation of rights guaranteed to Plaintiffs by the United States Constitution or other federal laws; and

- Whether Counts 9 and 10 plausibly allege that any Harris County policymaker retaliated against Plaintiffs for protected speech.

Rule 12(c) motions are decided under the same standard as Rule 12(b)(6) motions and are reviewed *de novo* by the Fifth Circuit. *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). To avoid dismissal, the Complaint must plead facts sufficient to "state a claim to relief that is plausible on its face." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

EMF_US 89669843v6

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft*, 556 U.S. at 678). While the Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff," the Court must not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions. *Gentilello*, 627 F.3d at 544; *see also Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996).

## ARGUMENT AND AUTHORITIES

### I.  The *Monell* Standard for Liability Under Section 1983

More than forty years ago, the United States Supreme Court in *Monell v. Department of Social Services* held that municipal liability under section 1983 can never rest on principles of *respondeat superior*. 436 U.S. 658, 694 (1978). Instead, municipal liability exists only in the narrow circumstances where the municipality's own official policies are the direct cause of a violation of some constitutionally guaranteed right. "Another way to put this is that there must be both municipal **culpability** and **causation**." *Piotrowski v. City of Houston,* 237 F.3d 567, 578 n.17 (5th Cir. 2001) (citing *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998)) (emphasis added). Culpability requires "both the involvement of a municipal policymaker and affirmative municipal action." *Id.* And causation

requires more than just a "but for" link. *Id*. at 581; *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 310 (5th Cir. 2004).

To meet the *Monell* standard, a plaintiff must prove three things:

1. an **official policy of the municipality**
2. was the **moving force**
3. behind some deprivation of a **constitutional right**.

*Monell,* 436 U.S. at 694; *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403–04 (1997); *Piotrowski*, 237 F.3d at 578. All three elements "are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." *Piotrowski*, 237 F.3d at 578.

"Where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability." *Bryan Cnty.*, 520 U.S. at 415. The Fifth Circuit has cautioned that "[m]istakes in analyzing section 1983 municipal liability cases frequently begin with a failure to separate the three attribution principles and to consider each in light of relevant case law." *Piotrowski,* 237 F.3d at 578.

### A.    Culpability — A Specific Municipal Policy Adopted with Deliberate Indifference to a Known Consequence of Constitutional Violations

To satisfy the first element — an official policy of the municipality — "each and any policy which allegedly caused constitutional violations must be

specifically identified by a plaintiff." *Id.* at 579; *see Monell*, 436 U.S. at 694. Courts "may not infer a policy merely because harm resulted from some interaction with a governmental entity." *Colle v. Brazos Cnty.*, 981 F.2d 237, 245 (5th Cir. 1993).

### 1.  Official Policy

Official municipal policy includes "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). On the latter point, a pattern of conduct is tantamount to official policy only when it is "so common and well settled as to constitute a custom that fairly represents municipal policy." *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc).

In addition, "[i]n limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick*, 563 U.S. at 61. But, where a claim turns on an alleged failure to train, municipal liability is "at its most tenuous." *Id.* (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822–23 (1985)).

## 2.  Deliberate Indifference

A facially unconstitutional official policy meets the first element of *Monell*. *Bryan Cnty.*, 520 U.S. at 407. But, where the plaintiff points to a policy in the form of a facially *innocuous* written directive, a widespread practice, or inadequate training, the culpability aspect of *Monell* requires proof that the policy was adopted with **deliberate indifference** to a known or obvious consequence of constitutional violations. *City of Canton v. Harris*, 489 U.S. 378, 387–88 (1989); *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169–70 (5th Cir. 2010); *Bryan Cnty.*, 520 U.S. at 407.

Deliberate indifference is a "stringent standard of fault." *Bryan Cnty.*, 520 U.S. at 410. There must be more than negligent oversight or even gross negligence; there must be a deliberate choice in the face of a known consequence of constitutional violations. *Id.*; *Brown v. Callahan*, 623 F.3d 249, 255 (5th Cir. 2010); *Boston v. Harris Cnty.*, No. Civ. A. H-11-1566, 2014 WL 1275921, at *90 (S.D. Tex. Mar. 26, 2014) ("Negligent training will not support a § 1983 claim against a municipality; nor is it sufficient to show that 'injury or accident could have been avoided if an officer had better or more training.'")

This generally requires a showing of more than a single instance of the alleged violation of constitutional rights. *Brumfield v. Hollins*, 551 F.3d 322, 329 (5th Cir. 2008). A plaintiff must demonstrate a pattern of similar violations

8

sufficient to have put the municipality on notice that its facially innocuous policies, practices, or failure to train are likely to result in a constitutional violation. *City of Canton*, 489 U.S. at 390.

### B. Causation — The Policy Must Have Been the Moving Force of the Constitutional Violation

Even where the plaintiff has identified a specific municipal policy adopted with deliberate indifference to constitutional rights, *Monell* still requires more. The "moving force" element of municipal liability necessitates that the plaintiff demonstrate a "direct causal link" between the policy and the deprivation that is more than a "but for" cause. *Piotrowski*, 237 F.3d at 581; *Johnson*, 379 F.3d at 310.

### C. The Violation — Only Constitutional Rights Are Covered

Finally, even if a plaintiff establishes a municipal policy adopted with deliberate indifference that was the moving force of an alleged injury, that injury must be one encompassed by section 1983. It is well-established that section 1983 does not create a claim for all torts inflicted by government employees. *Paul v. Davis*, 424 U.S. 693, 700 (1976); *Morgan v. Chapman*, 969 F.3d 238, 246 (5th Cir. 2020) ("[C]onduct which merely engenders common law tort liability, without infringing on Constitutionally protected interests, is not a sufficient basis to support a cause of action under Section 1983.").

EMF_US 89669843v6

Rather, section 1983 only provides a vehicle for a plaintiff to vindicate rights protected by the United States Constitution and other federal laws. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). And even where the right claimed is a federal or constitutional one, the complaint must plead facts supporting each element of a violation of that right.

## II. The Court's Prior Dismissal of the Supervisory Liability Claims Against Constable Rosen Necessitates Dismissal of Counts 2, 5, 7, and 8 Against Harris County

Plaintiffs previously asserted supervisory liability claims against Constable Rosen, and the Court dismissed those claims as inadequate under Rule 12(b)(6).[7] In Counts 2, 5, 7, and 8 against Harris County, Plaintiffs make the same allegations against Constable Rosen, dubbing him a Harris County "policymaker" in an attempt to reach the County's coffers.

But this will not work — supervisory liability and municipal liability have long been recognized to involve the same elements of proof. Thus, the Court's prior determination that Plaintiffs' allegations are insufficient to state a supervisory liability claim against Constable Rosen means that they are perforce inadequate to state a municipal liability claim against Harris County under the theory that Constable Rosen was acting on Harris County's behalf.

---

[7]   Dkt. 16.

### A. Supervisory Liability and Municipal Liability Involve the Same Elements of Proof

As with municipal liability, section 1983 jurisprudence prohibits holding supervisory officials liable for the actions of their subordinates under any theory of vicarious liability. *Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273, 289 (5th Cir. 2002). However, supervisors may be held liable if (1) they have personal involvement in the constitutional deprivation; or (2) they implement a **policy** with **deliberate indifference** to the repudiation of constitutional rights and that policy is the **moving force** of a constitutional violation carried out by a subordinate. *Id.* (citing *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987)) (emphasis added).

The Fifth Circuit has repeatedly acknowledged that the latter standard for supervisory liability mirrors *Monell*'s standard for municipal liability. *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994) (*citing City of Canton*, 489 U.S. at 381, 388) ("The [Supreme] Court's reasoning in assessing a municipality's liability leads us to use the same standard in assessing an individual supervisor's liability under § 1983."); *Southard v. Tex. Bd. of Crim. Just.*, 114 F.3d 539, 551 (5th Cir. 1997) (noting "the close relationship between the elements of municipal liability and an individual supervisor's liability" and holding that "the same standards of fault and causation should govern"); *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005) ("The standard applicable to failure to train

11

allegations against supervisors is based on that for municipal liability."). The only difference is that municipal liability requires an *additional* finding that the supervisor was a policymaker for the municipality.

### B. Counts 2, 5, 7, and 8 Against Harris County Are Based Upon the Same Alleged Conduct by Constable Rosen that the Court Determined Was Insufficient for Supervisory Liability

Here, Plaintiffs have never alleged that Constable Rosen himself participated in any violation of their rights. Instead, they asserted supervisory liability claims against Constable Rosen based upon his alleged implementation of injury-causing policies with deliberate indifference to the Deputy Plaintiffs' constitutional rights. The opening sentence of the Complaint captures the spirit of these supervisory claims against Constable Rosen:

> Under the **supervision** of Constable Alan Rosen at the Harris County Constable's Office, Precinct One, young female deputies were handpicked for "undercover operations" under the guise of legitimate police work and were molested and traumatized by their intoxicated male commanding officers for their own sexual gratification.[8]

And the Deputy Plaintiffs' specific causes of action asserted against Constable Rosen underscore their theory of supervisory liability. Counts 1 and 6 allege that Constable Rosen is liable for Plaintiffs' injuries because he adopted "policies" — through a pattern and custom, failure to train, and ratification — that

---

[8]   Dkt. 7 at ¶ 1 (emphasis added).

caused Chief Gore and Lieutenant Rigdon to violate the Deputy Plaintiffs' rights to equal protection (through sexual harassment) and substantive due process (through invasion of bodily integrity) under the Fourteenth Amendment.[9]

These **same allegations** of "policies" adopted by Constable Rosen form the crux of Plaintiffs' municipal liability claims against Harris County.[10] The following table illustrates the parallels:

| Dismissed Claims Against Constable Rosen | Parallel Claims Against Harris County |
|---|---|
| **Count 1 Allegations** – 1983 liability based upon sexual harassment (Deputy Plaintiffs): <ul><li>Constable Rosen "**created and oversaw**" the human trafficking unit that "subjected **untrained** subordinate officers to sexual contact from their commanding officers." Dkt. 7 at ¶ 115.</li><li>Constable Rosen "**refused to take proper remedial actions** when complaints were raised about the hostile work environment" in the human trafficking unit. Dkt. 7 at ¶</li></ul> | **Count 2 Allegations** - 1983 liability based upon sexual harassment and sexual battery (Deputy Plaintiffs): <ul><li>Constable Rosen as a "policymaker" for Harris County "**approved and oversaw** the operational concept in which subordinate officers would be forced into inappropriate sexual situations involving their commanding officers." Dkt. 7 at ¶¶ 125–126.</li><li>Constable Rosen "**failed to train** its</li></ul> |

---

[9] Dkt. 7 at ¶¶ 115, 116, 121, 183–189.

[10] Although the Deputy Plaintiffs pepper their allegations against Harris County with the phrase "and other policymakers," the only purported Harris County policymaker whose actions are referenced in their factual allegations is Constable Rosen. While a section 1983 plaintiff is not required to identify by name every policymaker alleged to have adopted a policy that caused her injury, she must allege plausible facts demonstrating that any unnamed policymaker actually adopted such a policy. *Doe v Harris Cnty. Precinct Six Constable Sylvia Trevino*, 452 F. Supp. 3d 548, 559 (S.D. Tex. 2020). Here, Plaintiffs make no factual allegations of any policy-creating conduct by anyone claimed to have policymaking authority other than Constable Rosen. Accordingly, their generic references to "other policymakers" are unsupported and cannot save their claims.

13

116.

- Constable Rosen "**ratified** Defendant Gore's actions in subjecting employees to abusive, traumatic, and harassing work environments" and "a hostile work environment in which [the Deputy Plaintiffs] were targeted for sexual abuse, denigration, and exploitation. Dkt. 7 at ¶¶ 111, 115.

undercover sex crimes officers in specific skills needed to handle recurring situations which arise in the unique nature of the particular assignment." Dkt. 7 at ¶ 129; *see also* ¶¶ 127, 130–145 .

- Constable Rosen "**failed to take remedial action** upon receiving complaints of the misconduct occurring in the 'bachelor party' stings." Dkt. 7 at ¶ 146.
- Constable Rosen "**ratified**" the sexual harassment by Gore and Rigdon because he "oversaw" the unit. Dkt. 7 at ¶ 149.

**Count 5 Allegations**– section 1983 liability based on sexual battery (Deputy Plaintiffs)
- "The **policies and customs" of Constable Rosen**, as a Harris County policymaker, **that "caused a hostile work environment likewise caused the sexual batteries."** Dkt. 7 at ¶ 177.
- Constable Rosen, as a policymaker for Harris County "**refused to correct** the situation" Dkt. 7 at ¶ 178.
- Constable Rosen, as a policymaker for Harris County, "**ratified** the sexual batteries" because he "**created and oversaw**" the human trafficking unit. Dkt. 7 at ¶ 179.

**Count 8 Allegations** – section 1983 liability based on violation of equal protection by loss of bodily integrity (Deputy Plaintiffs)
- Plaintiffs suffered invasions of their bodily integrity that "would not have occurred but for the policies, customs and intentional acts of Defendant Harris County, described above, as **implemented, ratified, and overseen** by Constable Rosen."

14

| | Dkt. 7 at ¶¶ 203–204.<br>• Constable Rosen, as a policymaker for Harris County, also "**ratified** the invasion of Plaintiffs' bodily integrity." Dkt. 7 at ¶ 205. |
|---|---|
| **Count 6 Allegations** - section 1983 liability based on sexual battery (Plaintiff McKinney)<br>• Defendant Rosen "**ordered an operation** in which Felicia McKinney was sent to a massage parlor with the **express intention** of having her be sexually assaulted by a suspected rapist." Dkt. 7 at ¶ 185.<br>• Defendant Rosen "**maliciously and callously exposed** McKinney to this assault with the intent that she be assaulted so that a public arrest could be made." Dkt. 7 at ¶ 187. | **Count 7 Allegations** - section 1983 liability based on sexual battery (Plaintiff McKinney)<br>• Constable Rosen, as a policymaker for Harris County, "**ordered an operation** in which it was intended that McKinney would suffer a sexual assault" and thereby "**intentionally subjected** to McKinney to a disturbing sexual assault." Dkt. 7 at ¶¶ 193, 195.<br>• Constable Rosen, as a policymaker for Harris County, "**failed to ensure the physical safety and psychological well-being** of McKinney while she was ordered to conduct an undercover investigation and arrest of a suspected rapist." Dkt. 7 at ¶ 192.<br>• Constable Rosen, as a policymaker for Harris County, "later **ratified this operation** in the media." Dkt. 7 at ¶ 195. |

While Harris County does not concede that Constable Rosen is its policymaker,[11] the Court need not decide that issue. The Court has already determined that the factual allegations underlying Counts 2, 5, 7, and 8 do not demonstrate a constitutional deprivation directly caused by some inadequate

---

[11]  *See Rhode v. Denson*, 776 F.2d 107 (5th Cir. 1985) (holding elected constable not the final policymaker for county); *Bowden v. Jefferson Cnty.*, 676 F. App'x 251, 254–55 (5th Cir. 2017) (unpublished) (summarizing cases); *Drain v. Galveston Cnty.*, 979 F. Supp. 1101 (S.D. Tex. 1997).

EMF_US 89669843v6

policy, failure to train, or ratification by Constable Rosen. Accordingly, those same factual allegations cannot support section 1983 liability against Harris County, even if Constable Rosen were a County policymaker. The Court must therefore dismiss Counts 2, 5, 7, and 8 against Harris County.

## III.   Even if the Court Had Not Already Decided the Issue, None of Counts 2, 5, 7, or 8 State Viable Claims Against Harris County

Had the Court not already rejected Plaintiffs' assertions of harm purportedly caused by Constable Rosen's policies, a fresh examination of the Complaint would lead to the same conclusion — none of Counts 2, 5, 7, or 8 against Harris County can stand on the asserted theory that any policies, training inadequacies, or ratification on the part of Constable Rosen were the moving force of Plaintiffs' claimed injuries, much less that Constable Rosen acted with deliberate indifference to a known and obvious risk of harm.

### A. Count 2 - The Deputy Plaintiffs' Section 1983 Claims for Violation of Equal Protection through Sexual Harassment Do Not Satisfy *Monell*

In Count 2, the Deputy Plaintiffs allege that sexual harassment perpetrated by Chief Gore and Lieutenant Rigdon resulted in a violation of their Fourteenth Amendment rights to equal protection for which Harris County is responsible. Specifically, the Deputy Plaintiffs allege they were subjected to a hostile and abusive work environment that arose from policies adopted by Constable

Rosen.[12] But there is no basis for liability against Harris County, because these allegations fail to establish any of the three required elements of *Monell*.

### 1.  No Municipal Policy

The Deputy Plaintiffs have not alleged facts identifying any official Harris County policy that led to their purported sexual harassment. They make five attempts, but all five fail, and never do they plead a pattern of prior incidents as necessary to establish deliberate indifference.

**First,** the Deputy Plaintiffs attempt to plead existence of a "policy" based on the assertion that Constable Rosen "approved and oversaw" the human trafficking unit's undercover sting operations, with "deliberate indifference" to "the constitutional injuries that would obviously result."[13] But, the Deputy Plaintiffs allege no facts to support this assertion.

They do not allege that the stings themselves were unlawful. Indeed, the Deputy Plaintiffs describe the intent of the human trafficking unit as a legitimate one: to conduct "undercover operations and stings" that will "get a trafficked sex worker to agree to an illegal act" so that Precinct One can "make the arrest" and then "encourage these victims to identify the individuals at the heart of the

---

12    Dkt. 7 at ¶ 125.

13    Dkt. 7 at ¶ 126.

illegal operation."[14] And they acknowledge that in carrying out the stings, female undercover officers posed as prostitutes and male undercover officers posed as johns because "[i]deally, this would entice any prostitutes called to the location to feel more comfortable in quickly agreeing to sex in exchange for a fee."[15]

Critically, the Deputy Plaintiffs do not point to any prior instances of sexual harassment at the stings (or elsewhere) made known to Constable Rosen such that his authorization of the human trafficking unit's work could be deemed deliberate indifference to a known and obvious risk of that harm. *See e.g., Snyder v. Trepagnier*, 142 F.3d 791, 798–99 (5th Cir. 1998) (holding that a pattern of prior similar constitutional violations is necessary before the continued operation of an allegedly inadequate policy or training will give rise to deliberate indifference).

The mere assertion that Constable Rosen attended one of the stings is not enough.[16] Plaintiffs offer no link between that alleged attendance and a known and obvious likelihood of sexual harassment—indeed, there is no allegation that any harassment even occurred at the undercover sting Constable Rosen allegedly attended. Put simply, the Deputy Plaintiffs offer no factual allegations that, if true, would establish that Constable Rosen's authorization of the human

---

14   Dkt. 7 at ¶ 13.

15   Dkt. 7 at ¶ 14.

16   Dkt. 7 at ¶ 1.

18

trafficking unit's work was deliberate indifference; all they offer are conclusory statements that the risks of sexual harassment were "known and obvious." That is not sufficient.

**Second**, the Deputy Plaintiffs attempt to meet the first element of *Monell* on their sexual harassment claims by alleging that Constable Rosen had "a policy of allowing supervising and subordinate officers to become intoxicated."[17] They acknowledge that Constable Rosen had written policies *limiting* the amount of alcohol officers can consume, but they nevertheless allege, without any factual detail, a "widespread practice" of officer intoxication.[18]

But, of course, allegations of subordinates ignoring a written policy do not create a policy to the contrary. *Baker v. City of Arlington*, No. 4:20-CV-00385-P, 2020 WL 6063311, at *3 (N.D. Tex. Oct. 14, 2020) (dismissing a claim where a policy forbade the alleged harassment). And, in any event, there are no factual allegations from which the Court could conclude that officer intoxication presented a known and obvious risk of *sexual harassment* to which Constable Rosen was deliberately indifferent.

**Third**, the Deputy Plaintiffs attempt to tie Count 2 to a municipal policy via the conclusory assertion that "longstanding practices" of Constable Rosen

---

17   Dkt. 7 at ¶ 142.

18   Dkt. 7 at ¶ 142.

established a policy of authorizing sexual harassment. They allege that Constable Rosen, as a policymaker for Harris County, had a "policy or custom of subjecting" deputies to "unwanted sexual contact."[19] But, again, the factual allegations in the Complaint do not bear that out; there are no factual allegations that, if true, would demonstrate a "persistent," "widespread," "common," or "well-settled" practice of such behavior. Without those facts, the Complaint is insufficient. *Piotrowski*, 237 F.3d at 578 ("[I]solated unconstitutional actions by municipal employees will almost never trigger liability."); *Johnson*, 379 F.3d at 310 (affirming summary judgment where plaintiff relied only on a single incident with no proof of similar incidents).

The Deputy Plaintiffs allege only that *they* were subjected to unwanted sexual contact, not anyone else. Courts have routinely required much more to establish a pattern or custom equating to an official policy. *See Piotrowski*, 237 F.3d at 582 (holding that harm that arises only from "this plaintiff's and her associates' allegations" does not establish a pattern); *Davila v. Webb Cnty.*, No. 5:12-CV-42, 2014 WL 12600791, at *10 (S.D. Tex. Sept. 23, 2014) (same) (citing *Peterson*, 588 F.3d at 851 (finding no prior similar incidents)). Without actual factual allegations sufficient to show a pattern of sexual harassment in the undercover stings, the Deputy Plaintiffs' attempt to establish a Harris County

---

[19]   Dkt. 7 at ¶ 125.

policy in the form of "longstanding practices" authorizing sexual harassment falls flat.

**Fourth**, the Deputy Plaintiffs allege a policy arose from Precinct One's alleged failure to properly train its officers on how to conduct the undercover stings or to provide sufficient sexual harassment training.[20] But municipal liability is at its "most tenuous" when it is based on a failure to train. *Connick*, 563 U.S. at 61. There must be specific allegations as to the defects of a particular training program and how the deprivation of rights was a "highly predictable consequence" such that a failure to train amounts to deliberate indifference. *Roberts*, 397 F.3d at 293. Otherwise, federal courts would be engaged "in an endless exercise of second-guessing municipal employee-training programs," which they are "ill suited to undertake" and which would "implicate serious questions of federalism." *City of Canton*, 489 U.S. at 392.

The Deputy Plaintiffs' failure to train allegations fall short. The first problem is that they are premised on Constable Rosen's alleged failure to train *the Deputy Plaintiff*s. For example, the Deputy Plaintiffs contend that they were "provided no specialized training for the assaults that would occur."[21] They further allege that Constable Rosen "failed to adopt policies to ensure that

---

[20]   Dkt. 7 at ¶ 127.

[21]   Dkt. 7 at ¶ 127.

subordinate officers were psychologically and professionally prepared to engage in undercover 'bachelor party' operations, including an understanding of their rights."[22]

This is not a proper application of the failure to train theory, which turns on whether there was a failure to train the *perpetrators* of the alleged constitutional violation, not — as Plaintiffs allege here — failure to train the *victims*. *See Pickens v. Harris Cnty.*, No. CIV.A. H-05-2978, 2006 WL 3175079, at *14, 16 (S.D. Tex. Nov. 2, 2006) ("No court has found municipal liability under a failure-to-train theory in a friendly-fire situation for failure to train the victim."); *Young v. City of Providence ex rel. Napolitano*, 404 F.3d 4, 26–27 (1st Cir. 2005) ("[A]ny proper allegation of failure to train must be aimed at [the shooter's] lack of training and not at the deficiencies in [the victim's] training"); *Stevens v. City of Bridgeport*, 607 F. Supp. 2d 342, 359 (D. Conn. 2009) ("[I]n a failure to train claim, a court must examine deficiencies in the training provided to the employees alleged to have violated the plaintiffs' constitutional rights, not deficiencies in any training provided to the plaintiffs."); *Drury v. Volusia Cnty.*, No. 6:10-cv-1176-Orl-28DAB, 2012 WL 162362, at *13 (M.D. Fla. Jan. 19, 2012) (emphasis added) (same).

---

[22]   Dkt. 7 at ¶ 136.

And, in any event, the Deputy Plaintiffs fail to meet their burden of identifying the specific defects of their training and demonstrating how Constable Rosen exhibited any deliberate indifference to a known and obvious risk of sexual harassment. *See Roberts*, 397 F.3d at 293. They do not explain what training they should have received. Nor do they point to any prior incidents of sexual harassment in the stings, much less a pattern of such conduct made known to Constable Rosen. Without that, their assertions of deliberate indifference are hollow. *See Snyder*, 142 F.3d at 798–99.

The only mention of Chief Gore and Lieutenant Rigdon's training — the proper focus for a failure to train theory — is one sentence in the "facts" section in their 44-page Complaint. There, the Deputy Plaintiffs allege that Chief Gore and Lieutenant Rigdon did not receive sexual harassment training until 6 days before this lawsuit was filed.[23]

But, even assuming that is true, as the Court must, the Deputy Plaintiffs never allege that training would have prevented the claimed violation of their rights — nor can they. Courts have rejected those sorts of claims when it comes to law enforcement personnel, whose regular duties already inherently involve a recognition that unauthorized sexual contact is improper. *See Barney v. Pulsipher*, 143 F.3d 1299, 1308 (10th Cir. 1998) ("Specific or extensive training hardly seems

---

[23]   Dkt. 7 at ¶ 17.

necessary for a jailer to know that sexually assaulting inmates is inappropriate behavior.") *Andrews v. Fowler*, 98 F.3d 1069, 1077 (8th Cir. 1996) ("In light of the regular law enforcement duties of a police officer, we cannot conclude that there was a patently obvious need for the city to specifically train officers not to rape young women."); *Kline ex rel. Arndt v. Mansfield*, 255 F. App'x 624, 630 (3d Cir. 2007) ("Because not committing the crime of sexually abusing a child is obvious, the failure of [Defendant] to train its employees to spot signs of sexual abuse . . . [is] not deliberately indifferent.").

Moreover, even if they could establish inadequate sexual harassment training, the Deputy Plaintiffs still have not pled a prior pattern of sexual harassment made known to Constable Rosen as necessary to establish deliberate indifference. *Snyder*, 142 F.3d at 798–99.

The only other allegedly inadequate training mentioned by the Deputy Plaintiffs relates to Constable Rosen's directive that officers "break contact as soon as possible" after an "attempt [by the target] to try to make sexual contact with the covert officer."[24] The Deputy Plaintiffs fault Constable Rosen for not having a similar directive concerning sexual contact *between officers*.[25]

---

24   Dkt. 7 at ¶ 135.

25   *Id.*

That argument was rejected in *Rodriguez v. Christus Spohn Health System Corp.*, 874 F. Supp. 2d 635, 646–47 (S.D. Tex. 2012). There, the court held a hospital's sexual harassment training was not insufficient merely because it addressed harassment *between employees* rather than *with patients*. "Using common sense, any employee could conclude that the sexual harassment training they received applies to all contact with other individuals, not just fellow employees." *Id*. at 646. Likewise, common sense dictates that Constable Rosen's policy directing Precinct One deputies to "break contact" in the event a target attempts sexual contact with an officer also discourages unauthorized sexual contact between officers.

**Fifth**, the Deputy Plaintiffs attempt to identify a County policy giving rise to their claims of sexual harassment by briefly pleading that Constable Rosen ratified the alleged constitutional violations after they occurred. But, establishment of a municipal policy based upon ratification is limited to "extreme factual situations," *World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009), where "authorized policymakers approve a subordinate's decision *and the basis for it*." *Peterson v. City of Fort Worth*, 588 F.3d 838, 848 (5th Cir. 2009) (emphasis added).

Here, the Deputy Plaintiffs allege that Constable Rosen "took no action to cease [Chief Gore's and Lieutenant Rigdon's] egregious misconduct, ratifying

their acts."[26] But a failure to discipline is not ratification. *Quinn v. Guerrero*, 863 F.3d 353, 365 (5th Cir. 2017); *Fuentes v. Nueces Cnty.*, 689 F. App'x 775, 780 (5th Cir. 2017) (affirming summary judgment on ratification despite evidence that the county failed to discipline officers); *Khansari v. City of Houston*, 14 F. Supp. 3d 842, 871 (S.D. Tex. 2014) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278–79 (5th Cir. 1992) (refusing to infer a policy from a municipality's failure to discipline an officer for a single incident)).

In addition, the Deputy Plaintiffs point to Constable Rosen's statement — made in response to this lawsuit — that that the officers' conduct involved "no violations of law or policy."[27] This, too, fails the *Monell* test: "Good faith statements made in defending complaints against municipal employees do not demonstrate ratification." *Zarnow*, 614 F.3d at 169. Even if the conduct is later shown to be unlawful, an earlier decision to defend it is not ratification as a matter of law. *Id.*

### 2.  No Moving Force

As detailed above, the Deputy Plaintiffs have failed to identify a Harris County policy that led to their alleged sexual harassment. But even if they had,

---

[26]   Dkt. 7 at ¶ 149.

[27]   Dkt. 7 at ¶ 149.

EMF_US 89669843v6

their claims would fail for another reason: they have pled no facts showing any alleged policy was the **moving force** behind their injuries.

The Deputy Plaintiffs plead "moving force" in neither words nor substance. Indeed, their Complaint is entirely conclusory on this point, alleging in only two sentences "a direct causal link" between their injuries and Harris County's purported "policies" or ratification.[28] Nowhere do they explain *how* any of their incorrectly alleged County policies *caused* Lieutenant Rigdon or Chief Gore to engage in the alleged sexual harassment. Such conclusory allegations are insufficient to avoid dismissal. *See Samples v. Harris Cnty.*, No. CV H-16-0829, 2016 WL 5105040, at *2 (S.D. Tex. Sept. 20, 2016) (dismissing claim based on conclusory pleading of moving force); *Crawford v. City of Houston*, 260 F. App'x 650, 655 (5th Cir. 2007) (affirming summary judgment when the only evidence of moving force was the "conclusory, speculative statements of Plaintiffs themselves").

Although the Deputy Plaintiffs allege that Constable Rosen *failed to stop* the harassment,[29] the failure to stop an event is not the event's moving force. *Something else* must be the moving force before a need arises to stop it.

---

28   Dkt. 7 at ¶¶ 148, 152.

29   Dkt. 7 at ¶ 149.

On that basis, the Fifth Circuit has recognized that the moving force of sexual abuse is the *abuser*, not any decision by the employer. *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 365–66 (5th Cir. 2020) (holding a hiring policy was not the moving force of an assault); *Deleon v. Cantrell*, No. 7:16-CV-00038-O-BP, 2017 WL 11645768, at *4 (N.D. Tex. July 19, 2017) (lack of or inadequate policies was not the moving force of sexual misconduct). That is true even if the governing body is alleged to have been negligent or failed to supervise the perpetrator. *McIntosh v. Smith*, 690 F. Supp. 2d 515, 535–36 (S.D. Tex. 2010) ("The Fifth Circuit has explained that to hold a municipality liable for failure to train or supervise a police officer, it must have been obvious that . . . this failure to train or to provide supervision was 'the moving force' that had a specific causal connection to the constitutional injury.").

There is good reason for this rule. "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Edgewood Indep. Sch. Dist.*, 964 F.3d at 364–65. An allegedly negligent decision allowing a perpetrator to violate someone's constitutional rights—in other words, the "but for" cause of the violation—is not enough to meet that standard. *Id.* at 365. As shown below, the

28

Deputy Plaintiffs' allegations do not rise above a "but for" theory to satisfy the moving force requirement.

As a matter of law, many of the claimed "policies" identified by the Deputy Plaintiffs cannot amount to the moving force behind the alleged sexual harassment. For example, inadequate training alone ordinarily "is not the moving force" because "the employee who causes the injury 'does not rely upon inadequate training as tacit approval of his conduct'." *Gagne v. City of Galveston*, 671 F. Supp. 1130, 1135 (S.D. Tex. 1987).

And an alleged policy of allowing intoxication is rarely the moving force (as opposed to a mere but for cause) of a constitutional deprivation. *See Holland v. City of Houston*, 41 F. Supp. 2d 678, 704 (S.D. Tex. 1999) (allowing off-duty officers to work at a bar was not the moving force, even though it was the but for cause, of the injury). That is especially true here because the Deputy Plaintiffs acknowledge that Constable Rosen had a policy prohibiting intoxication, which undercuts the moving force element. Claiming that an employee was "violating" an official policy "contradicts the essential causal link [the plaintiff] is required to establish." *Craine v. Alexander*, 756 F.2d 1070, 1073 (5th Cir. 1985); *see, e.g., Skyy v. City of Arlington*, 712 F. App'x 396, 400 (5th Cir. 2017) (city policy against lying in city records or reports); *Young v. City of Houston*, 599 F. App'x 553, 555 (5th Cir. 2015) (city policies to protect the elderly).

29

Nor could Constable Rosen's alleged ratification be the moving force. Not taking action to stop misconduct or determining later that the conduct was not wrongful cannot *cause* the conduct as a matter of law and logic. *Milam v. City of San Antonio*, 113 F. App'x 622, 628 (5th Cir. 2004). As the Fifth Circuit has noted, "it is hard to see how a policymaker's ineffectual or nonexistent response to an incident, which occurs well *after* the fact of the constitutional deprivation, could have *caused* the deprivation." *Id.* (emphasis in original).

### 3.  No Constitutional Violation

In addition to the missing municipal-liability elements, the Deputy Plaintiffs have also failed to plead an underlying constitutional violation of their right to equal protection under the law due to sexual harassment.

Although the Deputy Plaintiffs plead their sexual harassment claim under section 1983, title VII is instructive. That is because section 1983 and title VII are "parallel causes of action." *Cervantez v. Bexar Cnty. Civil Serv. Comm'n*, 99 F.3d 730, 734 (5th Cir. 1996). Accordingly, the "inquiry into intentional discrimination is essentially the same for individual actions brought under sections 1981 and 1983, and Title VII." *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citing *Briggs v. Anderson*, 796 F.2d 1009, 1019–21 (8th Cir. 1986)).

Under title VII, it is illegal "for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual

EMF_US 89669843v6

with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e–2(a)(1). That language prohibits sexual harassment in the form of (1) a tangible employment action, such as a demotion or denial of promotion, or (2) the creation of a hostile working environment. *Lauderdale v. Tex. Dep't of Crim. Just.*, 512 F.3d 157, 162, 166 (5th Cir. 2007) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998)).

Here, Count 2 alleges only the second form of harassment — a hostile and abusive working environment[30] — which requires proof that: (1) the employee belongs to a protected class; (2) the employee was subject to unwelcome sexual harassment; (3) the harassment was based on sex; and (4) the harassment affected a "term, condition, or privilege" of employment. *Id.* at 162–63.

To satisfy the fourth element, the harassment "must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). The environment must be deemed "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998).

---

[30]   Dkt. 7 at ¶¶ 156, 158.

31

In determining whether an environment is hostile or abusive, the court must look to the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; . . . whether it unreasonably interferes with an employee's work performance," *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993), and "whether the complained of conduct undermined the plaintiff's workplace competence." *Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 270 (5th Cir. 1998).

This case presents a novel issue – assessing whether the Deputy Plaintiffs have pled a hostile work environment when the ***admittedly legitimate law enforcement purpose of their work was to give the appearance of sexual interactions between officers***. This calls for a careful review of the Deputy Plaintiffs' actual allegations and a "common sense" application of the hostile work environment standard in light of the nature of their undercover work. *Equal Emp. Opportunity Comm'n v. Boh Bros. Constr. Co., L.L.C.*, 731 F.3d 444, 460 (5th Cir. 2013) (allegations of harassment must be viewed with "common sense") (quoting *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 82 (1998)). That exercise

32

reveals that the Deputy Plaintiffs have not pled "unwelcome" conduct that altered a condition of their work environment.[31]

As the Deputy Plaintiffs acknowledge, the whole objective of the undercover stings was to simulate an atmosphere of prostitution so actual sex workers would feel more at ease to make the sex-for-money deals leading to their arrest and — hopefully — the identification of the criminal sex traffickers responsible for their victimization.[32] The Deputy Plaintiffs further admit knowing ahead of time that — in order to maintain cover — the work would involve wearing provocative clothing, taking off their clothes, and engaging in sexually suggestive physical contact with male undercover officers.[33] Just like the exposure to addictive and physically harmful drugs may be part of the job of an undercover narcotics officer, so too, in this context, nudity and conduct giving the appearance of sexual interaction were part of the legitimate law enforcement objectives in which the Deputy Plaintiffs knowingly agreed to participate.

---

[31] The Deputy Plaintiffs have also failed to establish that any of the conduct about which they complain occurred because of their sex. They offer nothing more than conclusory allegations. Dkt. 7 at ¶ 110 ("Plaintiffs have been discriminated against and treated differently than similarly-situated male employees solely because of their gender."). But, "[a]n allegation that others are treated differently, without more, is merely a legal conclusion that we are not required to credit." *Rountree v. Dyson*, 892 F.3d 681, 685 (5th Cir. 2018).

[32] Dkt. 7 at ¶¶ 13–14.

[33] Dkt. 7 at ¶ 26.

EMF_US 89669843v6

Common sense dictates that that conduct — given its proper context — cannot be viewed as creating a hostile work environment, objectively or subjectively.

In an effort to avoid this outcome, the Deputy Plaintiffs claim a hostile work environment arose because they were "never warned" that Chief Gore and Lieutenant Rigdon would become aroused during the physical interactions of the stings or would engage in "kissing and licking" of their bodies.[34] Only Plaintiffs Sanchez and Huff actually allege that they were the subjects of this behavior. Plaintiff Sanchez pleads it generally, with no details as to frequency or context,[35] and Plaintiff Huff points to one instance that occurred in response to a prostitute's insistence that the undercover officers prove they were not law enforcement.[36] But, even if these allegations were true, they are not so "severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Meritor*, 477 U.S. at 67.

As a matter of law, one instance is insufficient, even where the work environment does *not* include feigned sexual interaction as part of the legitimate, agreed-upon work activities. *See Paul v. Northrop Grumman Ship Sys.*, 309 F. App'x 825, 829 (5th Cir. 2009) (holding that allegations did not support sexual

---

[34]   Dkt. 7 at ¶ 26.

[35]   Dkt. 7 at ¶ 40.

[36]   Dkt. 7 at ¶¶ 52–58.

harassment when on one occasion, a co-worker pressed against plaintiff's breasts, ran his arm around her waist, and rubbed his pelvic region across her hips and buttocks). And courts including this one have held similar allegations *not* severe or pervasive enough to alter the work environment. *See Barnett v. Boeing Co.*, 306 F. App'x 875, 879 (5th Cir. 2009) (concluding that unwanted touching, leering, sexually suggestive comments, and intimidation did not amount to severe harassment); *Gibson v. Potter*, 264 F. App'x 397, 398–99, 401 (5th Cir. 2008) (finding no severe harassment when supervisor grabbed employee's buttocks, made suggestive comments, and engaged in "sex talk"); *St. Clair-Sears v. Lifechek Staff Servs., Inc.*, No. 4:12-CV-52, 2013 WL 4487531, at *5 (S.D. Tex. May 30, 2013) (holding allegations not severe or pervasive where plaintiff's co-worker sat on top of her, rubbed her, stood close enough for the plaintiff to feel his erection, and placed his hand on her buttocks).

That is even more so the case here, where the core activity of the jobs the Deputy Plaintiffs accepted *was* feigned sexual interaction, such that engagement in that conduct cannot have "altered" the work environment. To the extent the Deputy Plaintiffs invite this Court to draw a line as to what feigned sexual interaction was necessary to maintain cover and what was not, this Court should decline, for the reasons discussed *infra* at Part III.B.3.

Plaintiffs Gomez and Sanchez also point to comments that they claim went beyond the legitimate law enforcement objective of the stings. Plaintiff Gomez claims that on one occasion, Chief Gore said to her "oh, I bet you would like this," and "pick out the ones you would personally prefer" while on a trip to acquire sex-related props for the stings.[37] While these comments, if in fact made, may have been unnecessary for the purpose of the stings, they cannot reasonably be viewed as pervasive or so severe as to have altered Plaintiff Sanchez's work conditions. *E.g., Frazier v. Sabine River Auth. La.*, 509 F. App'x 370, 374 (5th Cir. 2013) (isolated highly offensive utterances did not qualify as "severe"); *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007) (same); *Shepherd v. Comptroller of Pub. Accts. of Tex.*, 168 F.3d 871, 874 (5th Cir. 1999) (a workplace is not made legally hostile by mere utterance of "boorish and offensive" comments).

Plaintiff Sanchez claims that Chief Gore made "inappropriate comments about her naked body," but she does not explain what those were or how many times they were uttered.[38] Without those details, the Complaint does not contain allegations sufficient to support a hostile work environment claim. *See LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 394 (5th Cir. 2007) (DeMoss, J.,

---

[37]   Dkt. 7 at ¶ 24.

[38]   Dkt. 7 at ¶ 41.

EMF_US 89669843v6

concurring) (finding offhand comments alleged in nonspecific, conclusory fashion not to affect a term, condition, or privilege of employment).

### B. Count 5 - The Deputy Plaintiffs' Claims Against Harris County for Violation of Substantive Due Process Based on Sexual Battery by Chief Gore and Lieutenant Rigdon Do Not Satisfy *Monell*

Next, the Deputy Plaintiffs claim their substantive due process rights were violated through sexual battery they allegedly endured at the hands of Chief Gore and Lieutenant Rigdon during the undercover sting operations.[39] That claim fails all three required elements of *Monell*.

#### 1.  No Municipal Policy

Count 5 does not identify any policies giving rise to the Deputy Plaintiffs' substantive due process claim, instead pointing vaguely to "the policies and customs" of "Harris County, described above,"[40] including ratification and the refusal to "correct the situation."[41] But the description of a policy or custom cannot be conclusory or cursory; it must contain specific facts. *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997). Without such detail, the claim should be dismissed for not "satisfy[ing] the pleading requirements for a municipal-liability claim under Section 1983." *Integrity Collision Ctr. v. City of*

---

[39]   Dkt. 7 at ¶¶ 13–14, 125.

[40]   Dkt. 7 at ¶ 203.

[41]   Dkt. 7 at ¶ 178.

*Fulshear*, 837 F.3d 581, 588 n.6 (5th Cir. 2016) (rendering judgment in favor of city); *see also Doe v. Marion Indep. Sch. Dist.*, No. SA-17-CV-01114-OLG, 2018 WL 6272036, at *4 (W.D. Tex. Nov. 29, 2018) (dismissing equal protection claim for failure to allege a policy).

And even if the Court reads Count 5 as alleging the same policies as alleged in Count 2, those allegations are insufficient for all the reasons discussed *supra* at I.A.

### 2. No Moving Force

The Deputy Plaintiffs' claim for a deprivation of substantive due process based upon alleged sexual battery also fails the "moving force" prong of *Monell*. The entirety of the Deputy Plaintiffs' causation allegations in Count 5 are that unnamed policies "described above" were a "proximate cause" of the sexual battery.[42] These bare and conclusory allegations require dismissal. But again, even if the Court construed them to incorporate the moving force allegations from Count 2, dismissal would still be proper for all the reasons discussed *supra* at I.B. Without alleging a policy or moving force, the Deputy Plaintiffs have failed to state a claim for municipal liability under section 1983.

---

[42]   Dkt. 7 at ¶ 177.

### 3.  No Constitutional Violation

Finally, even if the Deputy Plaintiffs' Complaint supported the policy and moving force elements of *Monell*, Count 5 would still fail due to the absence of factual allegations demonstrating a substantive due process violation. To give rise to a substantive due process claim based upon alleged physical harm, the conduct at issue must "shock the conscience." *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*. 675 F.3d 849, 867 (5th Cir. 2012). This means "conduct that 'violates the decencies of civilized conduct'; conduct that is 'so brutal and offensive that it [does] not comport with traditional ideas of fair play and decency'; conduct that 'interferes with rights implicit in the concept of ordered liberty'; and conduct that 'is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience'." *Id.* at 867–68. This is an exceptionally high standard that weeds out all but the most significant constitutional violations, "lest the Constitution be demoted to . . . a font of tort law." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998).

Moreover, "deliberate indifference that shocks in one environment may not be so patently egregious in another," and "the constitutional proportions of substantive due process demand[] an exact analysis of circumstances before any abuse of power is condemned as conscience shocking." *Id.* at 850. In particular, courts must proceed with caution when determining whether law enforcement

conduct in the context of apprehending criminals shocks the conscience because officers in those situations "have obligations that tend to tug against each other" and "are supposed to act decisively and to show restraint at the same moment, and their decisions have to be made 'in haste, under pressure, and frequently without the luxury of a second chance.' " *Id*. at 853 (quoting *Whitley v. Albers*, 475 U.S. 312, 320 (1986)).

This is especially true in undercover operations, where law enforcement personnel often must make split second decisions in an atmosphere in which protecting themselves and their fellow officers competes with the need to maintain cover and make the bust. *See Matican v. City of New York*, 524 F.3d 151, 159 (2d Cir. 2008) (rejecting substantive due process claim by confidential informant who sued New York City because he was assaulted after a sting revealed his identity to a known violent criminal and noting that federal courts should be "loath to dictate to police how best to protect themselves and the public").

Here, the Deputy Plaintiffs joined Constable Precinct One's human trafficking unit and participated in the undercover stings with the goal of catching sex traffickers. They admit the stings were designed to achieve that legitimate law enforcement objective. Just like the police officers in *Lewis* and *Matican*, Chief Gore, Lieutenant Rigdon, and the other members of the Precinct 1

human trafficking unit are faced with competing obligations of protecting themselves and other officers but also needing to maintain cover and apprehend the targets. Maintaining an appearance of sexual interaction between officers was an integral part of remaining undercover in the sting and putting the targets at ease so they would complete the sex-for-money transactions that would lead to their arrest. In the context of these operations, the alleged conduct of Chief Gore and Lieutenant Rigdon does not shock the conscience.

### C.   Count 7 - Plaintiff McKinney's Claim for Violation of Substantive Due Process Based on Sexual Battery by a Third-Party Criminal Does Not Satisfy *Monell*

Plaintiff McKinney brings a separate claim against Harris County for violation of her substantive due process right to bodily integrity based on sexual battery she endured at the hands of a third-party criminal target of a Precinct One string operation.[43] She alleges that she was "ordered" by an unnamed Precinct One employee to go undercover at a massage parlor and "wait to be sexually assaulted to give the raid signal" in an effort to apprehend a massage therapist who had days before sexually assaulted Precinct One's Chief of Staff.[44] She asserts municipal liability on the theory that Constable Rosen failed to

---

[43]   Dkt. 7 at ¶¶ 192, 195.

[44]   Dkt. 7 at ¶¶ 75–76.

EMF_US 89669843v6

protect her from the assault and/or ratified it. This claim fails all three elements of the *Monell* test, for the reasons set forth below.

### 1. No Municipal Policy

As an initial matter, Plaintiff McKinney fails to identify any official policy giving rise to her injury. She does not claim Constable Rosen ordered her to wait to be assaulted before giving the raid signal; that directive allegedly came from some subordinate Precinct One employee that Plaintiff McKinney does not specifically identify. As to Constable Rosen, Plaintiff McKinney alleges only that — as a policymaker for Harris County — he "failed to ensure the physical safety and psychological well-being of McKinney while she was ordered to conduct an undercover investigation and arrest of a suspected rapist."[45]

But even taking that assertion as true, a failure to prevent harm is not enough to show a policy: a plaintiff "may not infer a policy merely because some harm resulted from some interaction with a governmental entity." *Colle*, 981 F.2d at 245. Nor is it enough that Constable Rosen allegedly could have protected her. *Milligan v. City of Newport News*, 743 F.2d 227, 231 (4th Cir. 1984); *see Edgewood Indep. Sch. Dist.*, 964 F.3d at 365–66. Rather, liability attaches only if Constable Rosen's conduct was deliberately indifferent, or "disregarded a known

---

[45] Dkt. 7 at ¶ 192.

consequence." *Zarnow*, 614 F.3d at 169–70. Simply alleging a failure to protect does not meet that standard.

Even designing a law enforcement operation that results in a victim being assaulted is not enough. In *Whitley v. Hanna*, 726 F.3d 631, 642–43 (5th Cir. 2013), the Fifth Circuit found no deliberate indifference where a Texas Ranger's investigation involved repeated observance of a minor victim with her known assailant, even though it allegedly resulted in the minor being abused well after there was sufficient evidence to support an arrest. The court held the Texas Ranger cannot be faulted for designing the law enforcement operation to ensure "evidence to secure [the assaulter's] conviction." *Id.* at 639. These are the types of judgment calls officers must frequently make, and they should be allowed to exercise their professional judgment without second guessing by the courts. *See id.* at 644; *Matican*, 524 F.3d at 159.

Plaintiff McKinney next argues that Constable Rosen somehow ratified her alleged assault by allegedly stating after the fact that it was "very important" that the constables "move very quickly" after his chief of staff was assaulted and that Plaintiff McKinney went inside the massage parlor "knowing of that danger."[46] But Plaintiff McKinney does not explain how those statements show Constable Rosen knew the unnamed deputy had purportedly "ordered" Plaintiff

---

[46]   Dkt. 7 at ¶¶ 77, 195.

McKinney to endure assault, as would be necessary for him to ratify such a directive. *Peterson*, 588 F.3d at 852; *see supra* at III.A.1. That is especially true because he made these comments in a press conference "immediately after" the alleged assault, so he could not have had all the material information — *e.g.* the purported express directive to endure assault — necessary to ratify the misconduct Plaintiff McKinney alleges. *See Skidmore v. Precision Printing & Packaging, Inc.*, 188 F.3d 606, 615 (5th Cir. 1999) (holding that the supervisor could not ratify the conduct when there was no evidence suggesting that the supervisor "possessed all material facts"). Plaintiff McKinney simply does not plead, nor can she, that Constable Rosen ratified any express directive that she endure a physical assault.

## 2. No Moving Force

Plaintiff McKinney's Count 5 also fails because she has not satisfied the moving force element of *Monell*. *Skidmore*, 188 F.3d at 615. Her causation allegations are entirely conclusory, pleading only "a direct causal link between the injuries alleged by McKinney and Harris County's actions as described above."[47] She offers no facts to explain how Constable Rosen's alleged conduct directly caused the third party criminal to assault her. Nor could she. As a matter of law and logic, the moving force of an assault is its perpetrator. *Edgewood Indep.*

---

[47]   Dkt. 7 at ¶ 198.

EMF_US 89669843v6

*School Dist.*, 964 F.3d at 365–66 ("When it comes to the 'moving force' behind the sexual abuse of Doe, we agree with the district court that Hernandez's misconduct was the actual cause of the violation."); *Deleon*, 2017 WL 11645768, at *4 (lack of policies or inadequate policies were not the moving force of sexual misconduct). And certainly, Constable Rosen's expressed desire to "move very quickly" to catch the massage therapist after he assaulted someone else did not *cause* that therapist to assault Plaintiff McKinney.[48] Harris County (like Constable Rosen) cannot be liable for the perpetrator's actions.

### 3.  No Constitutional Violation

Finally, even if she had properly pled the policy and moving force elements of *Monell*, Plaintiff McKinney's claim would fail because the alleged deprivation of her substantive due process rights does not "shock the conscience." *See supra* at Part III.B.3. The question here is not whether the tragic assault shocks the conscience—because the assaulter "is not a state actor," Plaintiff McKinney could not have suffered a constitutional violation at his hands. *Covington Cnty. Sch. Dist.*, 675 F.3d at 867; *see also DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989) ("[A] State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.").

---

48    Dkt. 7 at ¶ 77.

EMF_US 89669843v6

The question is rather whether any alleged conduct by *Harris County* "shocks the conscience." On this point, Plaintiff McKinney alleges that Constable Rosen placed her in harm's way and failed to ensure her physical safety and psychological well-being.[49] Neither of these is sufficient.

"The Fifth Circuit has rejected claims under the 'shocks the conscience' theory in cases involving harmful conduct by private individuals, even when state actors allegedly placed the victim in harm's way." *Cancino v. Cameron Cnty.*, No. 1:18-CV-135, 2018 WL 6573147, at *5 (S.D. Tex. Dec. 13, 2018) (citing *Covington Cnty. Sch. Dist.*, 675 F.3d at 868 (a school repeatedly allowed an unauthorized individual to pick up a student, the student was then sexually assaulted by the individual on multiple occasions); *Hernandez ex rel. Hernandez v. Tex. Dept. of Protective and Reg. Servs.*, 380 F.3d 872 (5th Cir. 2004) (Child Protective Services placed a minor with an individual who had a criminal record, and the individual later killed the child)). There must be something more. *Walton v. Alexander*, 44 F.3d 1297, 1302–03 (5th Cir. 1995) (en banc).

Likewise, allegations of failing to intervene earlier to stop a third party assailant are insufficient to implicate due process rights as a matter of law. *Whitley*, 726 F.3d at 639 n.2 ("Whitley has not alleged that Appellees themselves sexually abused her; at best, she has shown that Appellees conducted a deficient

---

[49]   Dkt. 7 at ¶¶ 192-193, 195-196.

investigation and failed to intervene earlier."). Plaintiff McKinney's allegations are really an attempt to assert a "state-created-danger theory" of liability, by which state actors may be held liable when "the state actor played an affirmative role in creating or exacerbating a dangerous situation that led to the individual's injury." *McClendon v. City of Columbia*, 305 F.3d 314, 324 (5th Cir. 2002). But the Fifth Circuit has never adopted the state-created-danger theory, and it should not be adopted here. *Whitley*, 726 F.3d at 639, n.5; *Magee*, 675 F.3d at 865.

Plaintiff McKinney offers nothing more factually to support her assertion of a substantive due process violation by Harris County based upon sexual battery at the hands of a third party. As such, that claim fails to present an underlying Constitutional deprivation necessary to trigger section 1983.

### D. Count 8 — The Deputy Plaintiffs' Claim for "Violation of the Right to Equal Protection By Loss of Bodily Integrity" Is Not Countenanced by the Fourteenth Amendment

Count 8 is perplexing. It confuses the substantive due process and equal protection prongs of the Fourteenth Amendment and is, at best, duplicative of Plaintiffs' other claims. Specifically, in Count 8, the Deputy Plaintiffs "adopt, reallege and incorporate" all preceding paragraphs of their Complaint and then allege that "[t]he loss of bodily integrity suffered by Plaintiffs was sufficiently severe to violate Plaintiffs' right to equal protection under the law."[50]

---

[50]   Dkt. 7 at ¶ 206.

EMF_US 89669843v6

But alleged invasions of bodily integrity implicate the *substantive due process* prong of the Fourteenth Amendment, not *equal protection*. *E.g.*, *Rodriguez*, 874 F. Supp. 2d at 652. Thus, to the extent Count 8 attempts to assert an equal protection claim based upon the alleged invasion of bodily integrity, it is legally infirm. And to the extent it attempts to asset a substantive due process claim based upon alleged invasion of bodily integrity, Count 8 is entirely duplicative of Count 5, which fails for the reasons discussed *supra* at III.B.

## IV.    Count 9 - The Deputy Plaintiffs Do Not State a Claim for Retaliation

The Deputy Plaintiffs next claim that Harris County violated their "rights to Equal Protection"[51] by retaliating against them for constitutionally protected speech.[52] But that claim fails because it is rooted in the wrong provision of the U.S. Constitution and because the underlying allegations would not state a claim even if the right provision had been invoked.

### A. The Fourteenth Amendment Does Not Protect Speech

Strangely, the Deputy Plaintiffs claim that the alleged retaliation for their speech "deprived [them] of their rights to Equal Protection."[53] But of course it is the First Amendment, not the Fourteenth Amendment, that protects against impermissible government intrusion on free speech. *See* U.S. Const. amend. I.

---

[51]    Dkt. 7 at ¶ 213.

[52]    Dkt. 7 at ¶ 209.

[53]    Dkt. 7 at ¶ 213.

Thus, Count 9 should be dismissed because it asserts a Fourteenth Amendment violation based upon the alleged invasion of rights not encompassed by that provision of the Constitution.

### B.  The Deputy Plaintiffs Have Not Stated a First Amendment Claim

Even if the Deputy Plaintiffs had invoked the First Amendment, rather than the Fourteenth, Count 9 would still be subject to dismissal under Rule 12(c) for two reasons: (1) it does not meet the elements of *Monell*, and (2) there are no factual allegations to support the assertion of an adverse employment action.

### 1.  No Policymaker or Municipal Policy

First, and most simply, the Deputy Plaintiffs fail to plead facts supporting municipal liability. The Deputy Plaintiffs must prove that a policymaker for Harris County engaged in the alleged retaliation or "the existence and enforcement of an official policy motivated by retaliation." *Lozman v. City of Riviera Beach*, 138 S. Ct. 1945, 1954 (2018); *Keenan v. Tejeda*, 290 F.3d 252, 262–63 (5th Cir. 2002) (affirming judgment in favor of county because there was no evidence a policy led to claimed retaliation). But the Deputy Plaintiffs have not even mentioned the word "policy" in their Count 9 allegations,[54] and they do not allege that any person with policymaking authority for Harris County took the

---

[54]   Dkt. 7 at ¶¶ 208–214.

allegedly retaliatory actions.[55] On this basis alone, the Deputy Plaintiffs' retaliation claim must be dismissed.

### 2.  No Constitutional Violation

The retaliation claim fails on the underlying violation, too. To state a claim for First Amendment retaliation, the Deputy Plaintiffs must show they suffered an adverse employment action, their speech involved a matter of public concern, their interest in speaking outweighed the government's interest in promoting efficiency, and the protected speech motivated the alleged adverse employment action. *Culbertson v. Lykos*, 790 F.3d 608, 617 (5th Cir. 2015). Those elements are not met here.

The Deputy Plaintiffs collectively make conclusory allegations that they "reported though proper channels at HCCO-1" their allegations of "sexual harassment and sexual assault," and were subjected to "ridicule, denigrations, and harassment" as a result. But the facts alleged in the Complaint do not back that up.

Plaintiff Gomez never pleads that she made any reports of alleged sexual harassment or sexual assault.[56] Nor does Plaintiff McKinney.[57] Plaintiff Huff only

---

[55]   Dkt. 7 at ¶¶ 208–214.

[56]   Dkt. 7 at ¶ 31.

[57]   Dkt. 7 at ¶¶ 63–81.

EMF_US 89669843v6

asserts that she tried to make a report of sexual harassment to Constable Rosen but was told to go through her chain of command. She never alleges that she actually followed through and made a report.[58] Only Plaintiff Sanchez alleges that she actually made a report — to Precinct One's Chief of Staff.[59]

And neither Plaintiff Sanchez nor Plaintiff Huff point to any harassment or ridicule targeted at them as a result of their reporting efforts. Plaintiff Sanchez pleads that she was "threatened" with further operations, but that so-called threat occurred before she reported the conduct, so it could not have been retaliation for her speech.[60] Plaintiff Huff alleges that Lieutenant Rigdon "called [her] supervisor almost daily to complain about something not being done," had to be told to "stop contacting" her, and "sought to ruin Huff's reputation after she [voluntarily] left the Human Trafficking Unit," but does not assert that any of that conduct was in response to any report that she ever made.[61] Moreover, Plaintiff Huff does not allege that the reports to her supervisor were inaccurate or unfounded, she provides no details of what contacts Lieutenant Rigdon was allegedly making, what they pertained to, or how they were problematic, and

---

[58]   Dkt. 7 ¶ 60.

[59]   Dkt. 7 ¶ 45.

[60]   Dkt. 7 ¶ 44.

[61]   Dkt. 7 at ¶¶ 61–62

51

she offers no factual assertions of when or how Lieutenant Rigdon purportedly sought to ruin her reputation. *Id*.

And even if Plaintiff Huff had alleged that she made a report, provided facts sufficient to support her claims of harassment by Lieutenant Rigdon, and asserted that his conduct was in response to her report, she still would not have stated a claim for First Amendment retaliation. To be actionable, "retaliatory harassment [must] rise to such a level as to constitute a constructive adverse employment action." *Breaux v. City of Garland*, 205 F.3d 150, 160 (5th Cir. 2000). This requires proof of conduct that creates a situation so "intolerable" that it reasonably can be viewed as compelling the plaintiff to transfer to a less desirable position or resign. *Colson v. Grohman*, 174 F.3d 498, 514 (5th Cir. 1999); (citing *Sharp v. City of Houston*, 164 F.3d 923, 934 (5th Cir. 1999)). "[O]stracism or unprofessional behavior" is insufficient. *Marchman v. Crawford*, 726 F. App'x 978, 986 (5th Cir. 2018) (affirming dismissal). As the Fifth Circuit has explained, "criticism, an investigation (or an attempt to start one), and false accusations" are "all harms that, while they may chill speech, are not actionable under our First Amendment retaliation jurisprudence." *See Colson*, 174 F.3d at 512. Nothing in Plaintiff Huff's allegations rises to that level.

The Deputy Plaintiffs also claim they were "transferred out of the human trafficking unit to less prestigious positions." But a "subjective perception that a

52

demotion has occurred is not enough to constitute an adverse employment decision." *Breaux*, 205 F.3d at 160; *Alvarado v. Texas Rangers*, 492 F.3d 605, 613–14 (5th Cir. 2007). Transfers can constitute adverse employment actions *only if* they are sufficiently punitive or if the new job is markedly less prestigious and less interesting than the old one. *Breaux*, 205 F.3d at 157 (citing *Click v. Copeland,* 970 F.2d 106, 110 (5th Cir. 1992) (emphasis added)). "A lateral transfer with no significant change in benefits is not an adverse employment action." *Johnson v. City of San Antonio*, 273 F.3d 1094 (5th Cir. 2001) (unpublished). The Deputy Plaintiffs' transfer allegations do not meet those standards.

Plaintiff Gomez pleads she "*asked* to be removed from the undercover team," and her request was "reluctantly granted."[62] She does not identify the unit into which she was transferred, much less provide any basis from which the Court could conclude that the new unit was less prestigious. Plaintiff Sanchez makes a conclusory assertion that she was transferred to "less prestigious duties," without providing any details about what those new duties were.[63] Plaintiff Huff seems to have gotten exactly what she wants out of the transfer; she pleads that she was granted the transfer she requested, which put her "safely

---

62    Dkt. 7 at ¶ 31 (emphasis added).

63    Dkt. 7 at ¶ 45.

back in the patrol division."[64] And Plaintiff McKinney does not allege she was transferred at all.

Without an adverse employment action, the Court need not go any further on the Deputy Plaintiffs' retaliation claims. But the claim fails for other reasons, too.

## V. Count 10 - Plaintiff Aluotto Does Not State A Claim For Retaliation

Count 10 is the sole count brought by Plaintiff Jacqueline Aluotto. She was a contract worker in Precinct One who provided advocacy services to help prepare trafficking victims to cooperate as witnesses against their traffickers.[65] She claims that "Harris County" violated her First Amendment Rights by terminating her for speaking up her chain of command about the alleged sexual harassment of the Deputy Plaintiffs during the undercover stings.[66] Her claim fails for three reasons: (1) she never alleges a policymaker or policy as required by *Monell*; (2) the speech at issue was made pursuant to her job duties, and is thus not constitutionally protected, and (3) there are no factual allegations supporting her assertion that the speech led to her termination. *Culbertson*, 790 F.3d at 617.

---

[64]   Dkt. 7 at ¶¶ 59, 61.

[65]   Dkt. 7 at ¶¶ 82–84.

[66]   Dkt. 7 at ¶¶ 93, 105.

EMF_US 89669843v6

### 1.  No Policymaker or Municipal Policy

Like the Deputy Plaintiffs, Plaintiff Aluotto does not allege that her termination occurred pursuant to some policy and she does not ever allege that anyone with policymaking authority for the County made the decision to end her engagement as an independent contractor. Indeed, she never identifies *anyone* who allegedly made that decision. As such, her retaliation claim against Harris County fails out of the gate under *Monell*. *See e.g., Shelton v. Bonham Indep. Sch. Dist.*, No. 4:17-CV-00764, 2018 WL 2236924, at *4 (E.D. Tex. May 16, 2018) (plaintiff's failure to plead policymaker or policy precluded municipal liability on First Amendment Claim).

### 2.  No Constitutional Violation

#### a.  The Speech Is Not Protected Because It Was Made Pursuant to Job Duties

Plaintiff Aluotto has also failed to plead an underlying First Amendment violation. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). Speech on matters within the scope of the plaintiff's job duties does not involve a matter of public concern and fails the second element of a retaliation claim as a matter of law. *Hawkland v. Hall*, 860 F. App'x 326, 330, 332 (5th Cir. 2021) (rendering judgment because employee's statements were made pursuant to official job duties); *Corn v.*

*Mississippi Dep't of Pub. Safety*, 954 F.3d 268, 278 (5th Cir. 2020) (affirming motion for judgment on the pleadings).

Courts consider a multitude of factors in determining whether speech was made pursuant to official duties, including whether the speech was made to coworkers or supervisors, whether the speech resulted from special knowledge gained as an employee, and whether the speech was internal or external. *Johnson v. Halstead*, 916 F.3d 410, 422 (5th Cir. 2019) (holding complaints made only to supervisors about internal discrimination are related to job duties); *Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 694 (5th Cir. 2007) (holding a high school athletic director's memorandum sent to his principal and office manager was not protected speech because it described concerns of which employee had "special knowledge" through his employment); *Davis v. McKinney*, 518 F.3d 304, 315 (5th Cir. 2008) (holding an audit manager's letter to university president and immediate supervisor discussing concerns about the university's inadequate response to her internal investigation was in the course of her official duties).[67]

It is well established that internal investigations are within an employee's official duties. *Rodriguez v. City of Corpus Christi*, 687 F. App'x 386, 390 (5th Cir.

---

[67]   The plaintiff's official job description does not control the analysis. In *Garcetti*, for example, even though writing a memorandum was not within the plaintiff prosecutor's official job duties, the Court held that the plaintiff "spoke as a prosecutor fulfilling a responsibility to advise his supervisor about how best to proceed with a pending case." 547 U.S. at 421.

2017) (administrative assistant); *Caleb v. Grier*, 598 F. App'x 227, 236 (5th Cir. 2015) (principal, maintenance person, and teacher's assistant). And the Fifth Circuit has held complaints about a coworker's alleged criminal activity to be within an employee's job duties, even though the employee had no "official duty" to report it. *Harrison v. Lilly*, 854 F. App'x 554, 558 (5th Cir. 2021) (affirming dismissal).

So too here. Plaintiff Aluotto pleads that her "goal, job description, and background" were to assist victims of traffickers and allow them to be used as cooperating witnesses against traffickers.[68] The undercover stings were integral to that job, and she had special knowledge of the stings due to her job, although she was not a participant in them. She reported the conduct "to her chain of command" and then made "direct complaints" to the internal affairs division.[69] She asserts that part of her motivation for her speech was the impact that the allegedly harassing behavior was having on the efficacy of the human trafficking unit and the related victim services she was trying to provide.[70] Put simply, Plaintiff Aluotto's reports to persons in her chain of command at Precinct One and in the Harris County DA's office regarding what she perceived as

---

[68]   Dkt. 7 at ¶ 83.

[69]   Dkt. 7 at ¶¶ 217–18.

[70]   Dkt. 7 at ¶¶ 85–92.

57

misconduct by Chief Gore and Lieutenant Rigdon during the sting operations were squarely within her job duties. Those reports are therefore not constitutionally protected speech as a matter of law.

### b.  No Timeline Sufficient to Infer Motivation

Plaintiff Aluotto also has not adequately pled that her protected speech was the motivating factor behind any alleged adverse employment action, the fourth necessary element of a retaliation claim.

Like the Deputy Plaintiffs, Plaintiff Aluotto tries to infer the requisite motivation by claiming "a close temporal proximity" between Harris County's awareness of her speech and the alleged adverse employment action.[71] While Plaintiff Aluotto pleads details about the timeline of her alleged retaliation, her claim nonetheless fails: even three to four months is not close enough to allow for a temporal inference of causation. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001); *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 306 (5th Cir. 2020) (affirming summary judgment because nine months does not allow inference of causation).

Plaintiff Aluotto pleads that she first confronted Constable Rosen about Chief Gore in January 2020,[72] and "around [that] time," his chief of staff told her

---

[71]   Dkt. 7 at ¶ 212.

[72]   Dkt. 7 at ¶ 93.

to stop speaking to Constable Rosen about those things.[73] Four months later, in April 2020, Plaintiff Aluotto complained via email to Chief Gore, Lieutenant Rigdon, Constable Rosen, and his chief of staff about the division.[74] She was then removed from the unit and transferred to "community outreach," although she does not claim that the transfer was retaliation. [75] Three months after that, in July 2020, Plaintiff Aluotto spoke to the head of the Sex Crimes Division at the District Attorney's office,[76] and then "after election day" (presumably November 2020), Plaintiff Aluotto was contacted to set up an interview with internal affairs.[77] The day after the interview, her hours were cut to zero.[78]

In sum, and taking her allegations as true, Plaintiff Aluotto made her first complaint in January of 2020, and her alleged termination was at least ten months later, sometime after election day. This does not meet the United States Supreme Court's "very close" rubric, and her claim must be dismissed.

---

[73]   Dkt. 7 at ¶ 96.

[74]   Dkt. 7 at ¶ 98.

[75]   Dkt. 7 at ¶ 98.

[76]   Dkt. 7 at ¶ 99.

[77]   Dkt. 7 at ¶¶ 102–03.

[78]   Dkt. 7 at ¶ 105.

59

## CONCLUSION

As demonstrated above, Plaintiffs' Complaint fails to assert facts that, if true, would support section 1983 liability against Harris County. All claims against Harris County in this action should therefore be dismissed with prejudice.

EMF_US 89669843v6

Respectfully submitted,

*/s/ Kelly Sandill*
Kelly Sandill
State Bar No. 24033094
S.D.O.T. No. 38594
HUNTON ANDREWS KURTH LLP
600 Travis, Suite 4200
Houston, Texas 77002
Telephone: (713) 220-4181
Facsimile: (713) 220-4285
ksandill@huntonak.com

ATTORNEY-IN-CHARGE FOR DEFENDANT
HARRIS COUNTY, TEXAS

OF COUNSEL:

Katy Boatman
State Bar No. 24062624
S.D.O.T. No. 1466131
Ashley S. Lewis
State Bar No. 24079415
S.D.O.T. No. 1457934
Leah Nommensen
State Bar No. 24101573
S.D.O.T. No. 3042052
Adrianna Culbreth
State Bar No. 24120785
S.D.O.T. No. 3696600
HUNTON ANDREWS KURTH LLP
600 Travis, Suite 4200
Houston, Texas 77002
Telephone: (713) 220-4200
Facsimile: (713) 220-4285
ashleylewis@huntonak.com
leahnommensen@huntonak.com
aculbreth@huntonak.com

EMF_US 89669843v6

-AND-

Daniel N. Ramirez
State Bar No. 24039127
S.D.OT. No. 36213
Brittany G. Mortimer
State Bar No. 24084647
S.D.O.T. No. 2563723
MONTY & RAMIREZ LLP
150 W. Parker Road, 3rd Floor
Houston, Texas 77076
Telephone: 281-493-5529
Facsimile: 281-493-5983
dramirez@montyramirezlaw.com
bmortimer@montyramirezlaw.com

-AND-

Neal A. Sarkar
Special Assistant County Attorney
State Bar No. 24093106
S.D.O.T. No. 2274036
Pam Rea
Assistant County Attorney
State Bar No. 00792790
S.D.O.T. 20799
Harris County Attorney's Office
1019 Congress, 15th Floor
Houston, Texas 77002
Telephone: (713) 274-5101
Facsimile: (713) 755-8924
neal.sarkar@cao.hctx.net
pam.rea@cao.hctx.net

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 21, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Kelly Sandill*
Kelly Sandill